# Garro *against* Thompson.

A mortgage vests the freehold in the mortgagee, and a subsequent judgment binds only the equity of redemption, which alone can be sold upon a *venditioni exponas.*

The act of the 6th of April 1830, providing for the security of the lien of a mortgage, is applicable to mortgages given as well before as after the passage of that act.

APPEAL from the decree of the court of common pleas of *Alleghany* county, appropriating the proceeds of the sale of the real estate of Samuel Thompson.

Samuel Thompson, being the owner of a house and lot in the city of Pittsburgh, on the 17th of February 1819 mortgaged the same to the executors of John Woods to secure the purchase money 3500 dollars.   On the 13th of September 1819 he executed a second mortgage on the same premises to Patterson and Lambdin for 3000 dollars.   On the 3d of November 1819 John Garro obtained a judgment against Samuel Thompson for 2000 dollars.   This judgment remained without revival until 1833, when a *fieri facias* was issued upon it, and the house and lot were levied and sold upon a *venditioni exponas* in 1833 to James Ross, Esq. for 5000 dollars.   It appeared that an ejectment had been brought upon the first mortgage and a recovery had ; and the mortgagees were put into possession in 1822, who remained in possession until 1833, and for that time were chargeable with rents to the amount of 3137 dollars 23 cents, leaving still a balance due upon the mortgage of 3457 dollars 74 cents.   The case was referred to Mr Metcalf as an auditor, who made report to the court of an appropriation of the fund: first to the judgment of John Garro, balance of debt and interest in full, 2541 dollars 38 cents; and the residue, after payment of costs, on account of the mortgage of John Woods's executors, 2390 dollars.

[Garro v. Thompson.]

Exceptions were filed to this report, but the court below (Dallas, President) confirmed the same.

The appellants filed the following reasons for the appeal in this case.

1. That the auditor erred in appropriating any portion of the money arising out of the sheriff's sale in this case to the judgment in favour of Garro, inasmuch as the mortgage in favour of John Woods's executors is the first lien. And the second is a mortgage of indemnity given to R. Patterson and Lambdin which has been prosecuted to a judgment, and of which judgment the President, Directors & Company of the Bank of the United States are the owners. And the third lien is the judgment in favour of Garro, to which the auditor erroneously appropriated the money, instead of appropriating it to the several liens according to their respective ages.

2. The report of the auditor is erroneous, inasmuch as the judgment of John Garro never having been revived its lien was lost.

3. The report of the auditor was erroneous, for the further reason that all the proceedings under the Garro judgment, with the sale and the sheriff's deed thereon, were advised, conducted and completed by the counsel of Mrs Woods, the mortgagee of the first lien, in order to extinguish the equity of redemption in the premises she had purchased.

*M'Candless* and *Ross,* for appellants.

It is conceived that previous to the act of the 6th of April 1830, *Purdon, last edition* 386, the purchaser would have taken a title clear of all incumbrances judicial or otherwise ; such were the decisions of our courts. See them ably collected by Judge *Baldwin* in his *Reports,* Thompson *v.* Phillips 278. To which, and the authorities there cited, the court are respectfully referred.

Does the act of assembly referred to change the law ?

Before the passage of the act of assembly the mortgage creditors had certain vested rights that, it is apprehended, could not be defeated. They had taken their mortgages under the law as it stood, and the practice of appropriating money at sheriff's sales was well known.

Granting, with regard to all mortgages given after its passage, that it might correctly prescribe the rule of appropriation *pro futuro,* has it the right to make a new one for cases of mortgages of record long before its passage? It is thought not. If the principle that ignorance of the law excuses nobody be correct, the decision of the supreme court in the case of Shultze *v.* Diehl, 2 *Watts* 276, would bear us out ; as there the sale was made after the passage of the law. And it is worthy of remark in this case that the bidders were, Ross the agent of the holders of the first, and Holdship who was prosecuting the second mortgage.

Again, it is conceived that the act of assembly does not embrace this case, because there were no liens against the property *subsequent*

VII.—2 L

to the two mortgages. Garro's judgment had lost its lien for several years, and had never been revived by *scire facias*. See Sinkett *v.* Wunder, 1 *Miles's Rep.* 361; Robbins *v.* Bellas, 2 *Watts* 359. But the case of the Westmoreland Bank *v.* Rainey, 1 *Watts* 26, puts the question at rest. There, inasmuch as five years had elapsed between the date of the judgment and the time of the sale, the court held that the lien of the new judgment on which the sale was made was gone.

With a decision of the highest court in power on the question that there is no lien, it is now asked does the act of assembly apply?

The act says, where the mortgage shall be *prior* to other liens on the said property except other mortgages, &c., the lien of such mortgage shall not be lost by a sale under a *venditioni exponas*, &c. Here there are no subsequent liens. How then can the act apply?

Judge Kennedy, in delivering the opinion of the court in the Westmoreland Bank *v.* Rainey, 1 *Watts* 30, already referred to, says, "the levy would have been sufficient under the old construction, &c., to continue the lien of the judgment upon the lands without a renewal for every five years under the act, had it not been for the passage of the act of the 26th of March 1827, which expressly requires a renewal of the judgment every five years in order to continue its lien; notwithstanding an execution may have issued within a year and a day from rendering a judgment. See also the able opinion of Judge Rogers on the same subject in the matter of Meason's Estate, 4 *Watts* 343, 344. This shows that the levy does not revive the lien of Garro's judgment.

The act of assembly does not therefore apply to this case, and the money it is conceived must be appropriated to the mortgages in their order.

I would suggest also that the above mode is the most just as regards the purchaser Mr Ross. He bid off the property believing such would be the application of the money.

*Shaler*, for the appellees.

The opinion of the Court was delivered by

Gibson, C. J.—The loss attendant on this purchase is one which it was supposed the act of 1830 was calculated to produce. The design of the legislature was to restore the law to what it was supposed to have been before the decision in Willard *v.* Norris, sanctioned by that in the Presbyterian Corporation *v.* Wallace; in the latter of which it was pressed upon us with unusual energy that a mortgage of land sold by a subsequent judgment remained a lien on it in the hands of the purchaser, and yet that the mortgagee might take satisfaction out of the proceeds at his option. Indeed there seems to have previously been a remarkable want of precision in the notion entertained of it both by the profession and the people. It is not surprising therefore that a purchaser familiar with the early

[Garro v. Thompson.]

difficulties of the subject should have fallen into a belief that the legislature intended only to prevent a dissolution of the mortgage lien without depriving the mortgagee of his asserted right to take the purchase money.  But whatever the design, it is decisive that the statute is not susceptible of that construction.  It enacts that the lien of a mortgage prior to other liens, except other mortgages, quit rents, and purchase money due to the commonwealth, shall not be destroyed or affected by a sale on a writ of *venditioni exponas* ; and the same restricted effect is allowed to a sale on a younger *levari facias.* The substance of the enactment, though clumsily expressed, is that no more than the equity of redemption shall be sold on an execution against the mortgagor.  Not a word in it to give the mortgagee a double chance of satisfaction by resorting to the proceeds and the land too, and thus making the latter pay double the amount of its value.  And without a provision for it, would such a chance be a reasonable or a natural result of the statute?  By the principles of the common law, nakedly restored in this instance, a mortgage vests the freehold, and a subsequent judgment consequently binds the equity of redemption which alone is sold on it, in England by decree, and here by *venditioni exponas.*  And it is sold as the exclusive right of the mortgagor, the price of it consequently going to those who are incumbrancers on it; and, as regards the excess, to the mortgagor himself.  It is a surplus resulting, but distinct, from the thing pledged; and as execution of it neither disturbs the mortgagee's security, nor divests an interest on which he has a lien, he can make no pretence of claim to the price of it.  He might just as well attempt to claim the price of a voluntary conveyance of the mortgagor's equity. When, in analogy to the sale of a chattel, the freehold was sold discharged of equities and liens, the mortgagee's fund was necessarily translated from the land to the proceeds of it; but when the statute fixed it in the land by restoring the instrument to its common law properties, it necessarily bounded his resort to that alone.  It was because his power had been taken away from him that he was formerly let in on the produce of it; but a purchaser of the mortgagor's right to redeem, standing as he does in the place of the debtor, pays but for the privilege of exercising it; and it was a misconception of the statute to suppose that the restoration of the mortgage to its primitive qualities could give him the whole estate in the hands of the purchaser, and the speculative value of the mortgagor's right of defeasance to boot.  Bidders are now compelled to keep the price bidden distinctly below their estimate of the incumbered value ; and to suffer the mortgagee to touch the proceeds of the equity would put just so much into the purchaser's pocket at the mortgagor's expense, an injustice I would not unnecessarily impute to the legislature as an intentional one.  It was not more to prevent losses incident to the sale of a doubtful title than to guard against an arbitrary use of the mortgagee's supposed priority, that his lien was held be divested by a judicial sale, and the proceeds of it substituted for the land,

[Garro v. Thompson.]

The construction claimed would restore the former mischiefs without adding a particle to the security intended to be protected. When, then, it was declared that the mortgagee had not only a lien which might not be divested, but also an estate which might not be sold on any execution except his own, it was substantively declared that he should have nothing by the execution of another.

This construction disposes of all the points but one : and even that is not worthy of a separate consideration ; for the constitutionality of the act will not bear a doubt. Nothing but an agreement with the judgment creditor and the mortgagor could give the mortgagor the purchase money. The judgment creditor sells the mortgagor's right of defeasance, and a bare waiver of his preference would entitle those next in succession, or the mortgagor himself. Now though it is conceded that there was a license to use the judgment as far as it might serve to turn the property into cash, it is not said that there was a transfer of its priority ; and the mortgagee could receive by virtue of it only as an assignee. It is therefore fortunate for the justice of the case, that the residue has been appropriated to the elder mortgage by a decree which has passed irrevocably *in rem judicatam*. This, and the probable enhancement of the property, will, it is hoped, prevent any considerable loss. The defalcation of agency and repairs from the rents while the premises were in the mortgagee's possession, belongs to an account which is to be settled when the mortgage comes to be paid out of the property, but not till then.

Decree affirmed.