[PHILADELPHIA, FEBRUARY 1ST, 1841.]

## BERGER *against* HIESTER.

### IN ERROR.

In 1832 A. executed three bonds, each with condition for the payment of a certain sum to B.; one on the 1st of April, 1833; one on the 1st of April, 1834, and the third on the 1st of April, 1835; and at the same time executed a mortgage of certain real estate, to secure payment of the bonds. In October, 1833, judgment was entered upon the bond first payable, and execution issued, under which the mortgaged premises were sold, in January, 1834, to C. *Held*, that the lien of the mortgage was altogether discharged by the sale.

ERROR to the Common Pleas of Montgomery County.

To May Term, 1836, of that court, Rachel Hiester brought a writ of *scire facias* against Jacob Berger, (with notice to George Richards and Wm. Carmony, terre-tenants,) upon a mortgage executed by the defendant to the plaintiff.

A case was stated for the opinion of the court, as follows: to be considered in the nature of a special verdict.

"On the 29th day of December, A. D., 1832, Jacob Berger executed to Rachel Hiester three several judgment bonds, each conditioned for the payment of $266 67, one of them payable the 1st day of April next ensuing the said date; the second payable the following 1st of April, (1834,) and the last payable the 1st of April, 1835. He also at the same time executed to her a mortgage on a certain messuage and lot of land, situate in the borough of Pottstown, for the better securing the payment of the said bonds. Upon this mortgage the above writ of *scire facias* was issued.

On the 14th day of October, A. D., 1833, judgment was entered up in the Prothonotary's office on the first mentioned bond for $266

67, payable on the first of April, 1833, as aforesaid. On this judgment a *fi. fa.* was issued at the suit of the said Rachel Hiester against the said Jacob Berger, to November Term, 1833, No. 12, under which *fi. fa.* the said messuage and lot of land were levied upon and condemned. To January Term, 1834, No. 4, a *venditioni exponas* was issued, under which the sheriff returned, that he had sold the said messuage and lot to George Richards, (the party above named) for $202, to whom he executed his deed poll, duly acknowledged, in open court, on the 21st of January, 1834.

To the term of May, 1836, the above writ of *scire facias* upon the said mortgage was issued, and returned by the sheriff, " made known to George Richards and William Carmony—*nihil habet* as to Jacob Berger."

The question for the decision of the court is, whether the lien of the mortgage was divested by the sale under the *fi. fa.* issued upon one of the bonds as aforesaid; or whether it remained a good and subsisting lien, for the balance due upon the said mortgage, after the proceeds of the said sale were applied towards the payment of the same.

If the court shall be of opinion that the said purchaser holds the premises discharged from the lien of the said mortgage, then judgment is to be entered for the defendants. But if the court shall be of opinion that the said lien was not divested by the sale, then judgment to be entered for the plaintiff; the amount to be ascertained by the attorneys."

On the 19th of December, 1839, the Court of Common Pleas gave judgment for the plaintiff upon the case stated.

On the 10th of April, 1840, the following supplement to the case stated was filed.

" And now to wit, February 19th, 1840—The attorney for the plaintiff, and the attorney for the defendants, not being able to agree as to the amount for which the judgment in this case shall be entered under the decision of the court, submit as a part of the case in the above suit, the following statement, the whole to be subject to revision on writ of error, viz.: On the judgment under which the property was sold to George Richards, as stated in said case, there remains unpaid the sum of $118 20, with interest from the 29th of January, 1834. This balance, now amounting to the sum of $155 03, the plaintiff's counsel contends, forms a part of the lien of said mortgage on said premises, and is to be added to the amount of the other two bonds, in ascertaining the amount of the judgment in this case. The defendant's counsel contends that no part of the judgment under which the property was sold to George Richards, ought now to be included in calculating the amount for which judg-

ment is to be rendered in this suit. If the court shall be of opinion with the plaintiff's counsel, on this point, then the judgment to be rendered for $916 32. If the court shall be of opinion with the defendant's counsel, then judgment to be only for the sum of $761 33, with interest from this date."

On the 2d of October, 1840, the Court of Common Pleas gave judgment for the plaintiff on the case stated for $916 32: whereupon this writ of error was taken, and the following errors were assigned.

" 1. The court erred in giving judgment in favour of the plaintiff upon the original case stated.

2. The court erred in giving judgment in favour of the plaintiff, for the sum of $916 32, upon the supplemental case stated."

Mr. *Freedley* for the plaintiff in error.

1. The mortgage and the bonds which it was given to secure, constitute but different parts of the same instrument, upon which the mortgagee has three remedies in case of default in payment at the stipulated time. 1. He may bring ejectment and recover possession of the land, and hold it until his debt, interest, and costs are paid. 2. He may obtain judgment on his bond, and, by execution, sell the land mortgaged, or other estate of the obligor. 3. A year and a day after the last payment on the mortgage is due, he may sue out a *scire facias;* and, after judgment, he may sell the mortgaged premises by *lev. fa.*; in which case no condemnation is necessary. In either case the lien has relation to the time when the land was specifically pledged for the payment of this debt, so far, at least, as to cut out all liens subsequent to that of the mortgage. *Simpson* v. *Ammon,* (1 *Binn.* 175.) *Bantleon* v. *Smith,* (2 *Binn.* 146.) *Gordon* v. *Correy,* (5 *Binn.* 552.) The very questions in this case appear to have been decided in *M'Call* v. *Lenox,* (9 *Serg. & Rawle,* 302.) Although the mortgagor may pursue either and all of these several remedies, he cannot sell the land twice for the same debt. If he sells it by execution issued upon the judgment obtained upon his bond, he cannot again sell it by *lev. fa.* on his mortgage; any more than he could again sell it on the same judgment on the bond. They are for the same debt; and a sale under either draws with it the equity of the other, and passes the whole right. These are principles which would not be disputed but for the act of assembly of the 16th of March, 1830, (5 ed. *Purd.* 386,) which provides that, " from and after the passage of this act, where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground-rents, and the purchase money due to the commonwealth, the lien of such mortgage shall not be destroyed, or in any way affected by any sale made by virtue

or authority of any writ of *venditioni exponas*." Does this act of assembly change the law as applicable to the case under consideration? This law was intended for the protection of third persons. It was not intended to prevent a person from destroying the lien of his own mortgage by selling the property under the bond which the mortgage was given to secure. Will it be contended that since this act of assembly a man cannot proceed by judgment upon his bonds and sell the mortgaged premises, except subject to his mortgage? If this were so, would the plaintiff be entitled to the proceeds of sale? Would it not go to the judgment-creditors next subsequent to the mortgage? or, if no judgment, then to the defendant himself? The effect of such a construction would be to say that, in the case of a mortgage payable by instalments, the mortgagee can have no remedy against the mortgaged premises, except to take possession by ejectment, until one year after the last payment is due. Suppose there were no bonds, but that the mortgage itself contained a covenant for the payment of the instalments; in an action of covenant on the mortgage for recovery of the instalments as they become due, the judgment would take precedence from the lien of the mortgage. The circumstance of the covenants for payment of the money being in separate writings can make no difference. The lien of the mortgage is not prior to the lien of the judgment for the debt which it was given to secure. They are one and the same. If several mortgages are entered at one and the same time, a sale under any one will divest the lien of the others, whether they are due or not; for they are not prior within the meaning of that act of assembly.

2. The mortgaged premises have been taken in execution, and sold under a judgment entered upon one of the bonds. The proceeds of sale were applied towards the extinguishment of the debt secured by this bond. The plaintiff now contends that he is entitled to recover the balance of said bond by again selling the land, under process issued upon the mortgage. The bond is the principal evidence of the debt; the mortgage is only collateral. He certainly cannot sell it again on the judgment on the bond. According to the principles established in *M'Call* v. *Lenox*, he cannot sell it a second time on the mortgage. The plaintiff cannot sell the land twice for the same debt.

Mr. *Mulvany* contra.

The act of 1830 is express and in point. It makes no distinction between the case of a sale under a younger lien held by the mortgagee and any other person. This is an attempt to obtain land at a public sale at one-third its value. In *Jackson* v. *Hull*, (10 *Johns. Rep.* 481,) a case exactly like the present, it was held that the sale under the judgment upon a bond was only of the equity of redemption,

(Berger *v.* Hiester.)

*Rickert* v. *Madeira,* (1 *Rawle,* 328.)    *Smith* v. *Shuler,* (12 *Serg. &*
*Rawle,* 240.)

The opinion of the court was delivered by

Gibson, C. J.—That a sale on a judgment for a debt, secured by
a mortgage, discharges the lien of the mortgage notwithstanding the
act of 1830, was asserted in *Pierce* v. *Potter,* (7 *Watts,* 477,) and
put on what we think tenable ground.   That case was not exactly
like the present, nor was a decision of the point absolutely necessary
in it; still it is one of the buttresses of the judgment, and what is of
decisive importance is, that at least one title, we are told, has been
advisedly paid for on the authority of it.   I may add to the reasons
of the judge who delivered the opinion, that, though such a sale is
within the letter of the act, it is not without its spirit, because it is
not within the mischief which was intended to be remedied by it.
We well remember how that act was procured, and what it was
designed to meet.   It was the offspring of a panic among a very
numerous class of creditors, who supposed that their debts would be
jeoparded if the lien of a mortgage might be discharged without the
mortgagee's consent.   It is bootless now to say, what is shown by
daily experience, that their fears were groundless, and that the fruit
of their influence with the legislature bears heavily on debtors and
younger lien creditors ; but the disastrous consequences of the sup-
posed remedy is a legitimate reason why it should not be pushed
beyond the supposed mischief.   That its consequences have been
disastrous, has been perceived whenever we have had occasion to
observe them; of which *Garro* v. *Thompson,* (7 *Watts,* 416,) and
*Colwill* v. *Hamilton,* to be reported in Mr. Watts's forthcoming
volume, are pregnant instances ; nor would the present one be less
so, did we make the purchaser pay the price of the land twice told,
by giving to the words of the enactment, the widest sweep of which
they are susceptible.   The act is redundantly worded, and the mean-
ing is consequently ill expressed ; but the purport of it is, perhaps,
to declare that no mortgage or judgment shall bind more than the
equity of redemption springing from a prior mortgage ; and that no
more shall be sold on a *liberari* or *fieri facias* by a subsequent in-
cumbrancer.   The object was professedly to do no more than guard
the security of the prior mortgage creditor from disturbance by those
who should come after him, and be entitled only to what should be
left when he should have been satisfied ; but what need could there
be to guard his security against another security under his own
control?   In the present case, the securities are cumulative ; but
that is immaterial, for, I take it, the consequence would be the same
were they securities for debts arising out of different transactions.
The design was to protect the mortgage from the intermeddling of
subsequent creditors; but can a judgment creditor, who is himself

the prior mortgagee, be deemed a subsequent creditor within the purview of the statute, or, in his capacity of mortgagee, an object of protection against himself? When he appears in a double character, it is obvious that a case has occurred which was not contemplated, nor consequently provided for. It is a maxim that any one may renounce the benefit of a privilege provided for himself; and when a mortgagee desires to sell the land on his judgment before a year and a day has elapsed from the time when the debt became due, what is to prevent him. The letter of the statute? We all know what that is, and how worthless are accidental and sweeping expressions. There may be no intermediate creditor; and where there is one, it is not his interest, nor that of the debtor, to object to a sale of the entire estate. That the mortgagee may sell it thus on his judgment alone, cannot be disputed on any principle of legitimate interpretation. But what if he choose to sell only the equity of redemption? He may certainly do so, since the statute, as he might, according to *Stackpole* v. *Glassford*, (16 *Serg. & Rawle*, 163,) have done before it. Suppose, however, that he does not propose the estate expressly subject to the mortgage. Let him, then, be taken to sell the fee as he would have been taken to do in like circumstances before the statute. He did not propose the property specially in this instance; and the purchaser consequently took it discharged of the mortgage.

Judgment of the Common Pleas reversed; and judgment rendered on the case stated, for the defendant below.