## CLARKE *v.* STANLEY.

A. mortgaged lands to secure bonds payable in ten years, with interest payable semi-annually. A judgment on the bonds for interest accrued, and a sale within the ten years, under a *venditioni* issued thereon, divests the mortgage securing the bond and all subsequent mortgages.

The date of the sheriff's sale is the period when it is to be ascertained whether a mortgage is prior to all other liens, &c., within the act of 1830. A judgment recovered against the mortgagor before the registry of the mortgage, but satisfied before the sale was made, is not a prior lien which will operate to divest the mortgage by the sheriff's sale : Per WOODWARD, P. J.

In error from the Common Pleas of Centre.

This was a *sci. fa.* on a mortgage, and the only question was, whether it was divested by a sheriff's sale. The facts were these : On the 31st August, 1844, H. Philips conveyed to Ullman & Stanley certain lands in Centre, Clearfield, and Cambria counties, and on the same day took a mortgage for part of the purchase-money, which was registered September 28th. The bonds secured by this mortgage were one for $80,000, with interest at 5 per cent. for two years from the date, and at 6 per cent. thereafter, payable semi-annually; two for $21,000 each, one for $5,000, and two for $8,000 each. On these interest was payable from their dates, semi-annually, at the rate of $2\frac{1}{2}$ per cent. for two years, and at 5 per cent. thereafter. All the bonds secured by this mortgage were payable September 1st, 1849. Some of these

bonds were assigned by Philips, and it was said re-assigned after judgment, but these facts appear to be immaterial. In 1846, judgment was obtained on these bonds for the penalty and damages assessed, for the interest then in arrear. In 1848, under writs of *fi. fa.* and *vend. ex.*, the mortgaged premises were sold by the sheriff to Philips, the mortgagee and a defendant below.

The plaintiff's title was this: On the 1st September, 1844, Ullman & Stanley mortgaged the lands sold by the sheriff as before mentioned, to the plaintiff, to secure a bond payable in two years. This was registered in July, 1846. On this mortgage the *sci. fa.* issued; whether it was divested by the sale above mentioned, was the question. To show that plaintiff's mortgage was not within the protection of the act of 1830, the defendant also proved that before the registry of his mortgage, two judgments had been recovered against the mortgagors, viz: in 1846. But it was proved they had been satisfied before the sheriff's sale to defendant.

On these facts, his honour, WOODWARD, P. J., instructed the jury. "That Mr. Philips's mortgage was divested of its lien by the sheriff's sale, is not questioned; nor, that the money raised was applicable to it as the prior lien; but it is maintained with great confidence on the part of the plaintiff, that the sale left the second mortgage intact, and that, as an existing encumbrance, it may be enforced against the land. This position is based upon the act of 6th April, 1830, which enacted, that 'from and after the passage of this act, when the lien of a mortgage upon real estate, is, or shall be prior to all other liens upon the same property, except other mortgages, ground-rents, and the purchase-money due to the commonwealth, the lien of such mortgage shall not be destroyed, or in any way affected by any sale made by virtue or authority of any writ of *venditioni exponas.*' The law was settled before this act was passed, that the sale of mortgaged premises on a judgment junior to the mortgage, divested the lien of the mortgage; and the object of the act was undoubtedly to change the law as settled, and to exempt, not only first mortgages, but second and third mortgages, if preceded by no other liens than prior mortgages, from the influence of a sheriff's sale on a junior judgment. But, when the case of Pierce *v.* Potter, 7 W. 476, occurred, the late Mr. Justice Kennedy took occasion to demonstrate, that the ample and comprehensive terms used by the legislature in the act of 1830, could not have been intended to embrace a sale by the sheriff on a junior judgment obtained for the same debt as the mortgage. This distinction was further illustrated and enforced in Berger *v.*

Heister, and I hold, that the legislature have sanctioned this construction, and adopted the same distinction in the proviso to the — section of the act of 16th April, 1845, supplementary to the act of 1830. So that it may be considered a settled matter, that sales by a sheriff of mortgaged premises on a judgment for the mortgaged debt, whenever obtained with reference to other liens, are not within the act of 1830, and stand on the law as settled in Pennsylvania, before that act had a being. And the construction of the act of 1830, is the same in respect to sales on judgments, obtained for interest due on part of the mortgage debt: West Branch Bank *v.* Chester.

"Now, although the plaintiff's case falls exactly within the letter of the act of 1830, it is a question of great importance, whether, in view of the settled construction of the act of 1830, it be within its spirit, meaning, and protection? I am not aware that this question has ever been directly met and settled in Pennsylvania, though all the reasoning of the courts on the act of 1830, points to a conclusion unfavourable to the present plaintiff. Before deciding this question, I dispose of another that has been raised here. At the time Mr. Clarke's mortgage was recorded, we have seen that, beside Mr. Philips's prior mortgage, there were three judgments against Ullman & Stanley, that were liens on the mortgaged premises, and prior to the lien acquired by Mr. Clarke, which judgments, however, were paid and satisfied before the sheriff's sale; so that at that time, the only lien, prior to the mortgage of Mr. Clarke, was the mortgage of Mr. Philips.

"'When the lien of a mortgage upon real estate is or shall be prior to all other liens, upon the same property, except other mortgages, &c.,' says the act of 1830, it is not to be impaired by sheriff's sales on *venditioni exponas.* At what point of time is the test to be applied? When is the mortgage to be said to be prior to all other liens, except other mortgages; when it is recorded, or when the sale of the premises takes place? At the latter point of time, I suppose. Then it is that the rights of lien-creditors come to be asserted; then the liens are to be marshalled for purposes of distribution; then it is that purchasers want to be easily and infallibly informed by the records what liens exist; what liens will disappear with the sale, and what liens will survive the sale? Intolerable difficulties would be encountered by purchasers at sheriff's sales, if they were to be obliged to go back, perhaps for twenty years, to determine whether a mortgage that they now see on the records was, at its entry, prior to all other liens, except

other mortgages, ground-rents, and purchase-money due the commonwealth. The question is sufficiently difficult, as an inquiry of the time present; for in few branches of the law do more nice and complicated questions arise, than frequently spring out of 'all other liens;' but if the inquiry is to be carried back through revolutions of judicial opinion and legislative enactment—through records badly made up and worse preserved—through counties divided and subdivided—the inquirer will be lost in a worse than Cretan labyrinth, and, taking counsel of his prudence, will not bid for an estate, whose actual encumbrances he cannot determine. The policy of our law has always been to encourage purchasers, and to make the estates of debtors fetch an outside price. How much the judicial mind has been animated by this policy, may be seen in the line of decisions running from McCall *v.* Lennox, 9 S. & R., down to the present day. In faithful adherence to this policy, and with an abiding impression of its wisdom and necessity, I rule this question in favour of the plaintiff, and decide, that the time of the sheriff's sale is the period to test the priority of the mortgage in question, and the intervening judgments having been removed before that period, I hold that Mr. Clarke's mortgage was prior to all other liens, except other mortgages, within both the words and the meaning of the act of 1830.

"Recurring now to the main question already stated, and fairly and distinctly raised, I feel constrained, by all the analogies which adjudged cases afford, and by the tenor of my own opinion, in the case of the W. B. Bank *v.* Chester, which is understood to have been affirmed, to regard the sale made by the sheriff, on the 24th of January, 1848, as virtually a sale upon the mortgage of Mr. Philips, and of course effectual for divesting not only the lien of that mortgage itself, but all other liens.

"A mortgage, though in form a conveyance of an estate by a mortgagor to the mortgagee, is in fact a mere security for debt. The bonds usually recited in the mortgage are another security for the same debt. A subsequent mortgagee is as much bound to take notice that the recited bonds exist, and that the first mortgagee has remedies which are peculiar to them, as he is to take notice of the date and amount of the mortgage, or of the fact of its existence. Both mortgage and bonds are instruments for securing and recovering the money which constitutes the debt. The debt itself is the encumbrance on the land. It is this which has priority and protection. But either of the instruments may be employed to convert the mortgaged estate into money. Whichever is adopted,

the sale must be a public sale, and by the sheriff. The writs, it is true, bear different names; but there is no more virtue in a sheriff's sale on a *levari facias*, than in a sheriff's sale on a *venditioni exponas*. The one, as well as the other, sells the estate, and when the estate is sold for the mortgage debt or any part of it, the whole estate, legal and equitable, is sold, unencumbered, to the purchaser, whatever the name of the writ under which the sheriff acts. There is nothing left, then, for the second mortgagee, except the personal responsibility of his debtor. He is not saved by the act of 1830, though the sale may have been by *venditioni exponas*, because it was not the object of that act to protect him against a prior mortgagee, but only against a subsequent judgment-creditor. If he says that it was a subsequent judgment-creditor who sold his mortgaged estate, the answer is, it was a prior mortgagee, and you knew he held bonds as well as a mortgage, and might proceed by a judgment and *venditioni exponas* to a sale of the estate. The mortgage debt has caused the sale of the estate. It is this fact, and not the name of the writ, that divests the lien of the second mortgage. Although the act of 1830 was manifestly designed for the benefit of second mortgagees, as well as first mortgagees, it was designed for the benefit of both as against mere junior judgment-creditors, and could never have been intended to protect the second mortgagee as against the first. And yet, if it be so, that a sale on a *venditioni exponas* for part of the debt of the first mortgage, divests the lien of that mortgage, and turns the mortgagee over to the depreciated price of the estate, whilst the second mortgage, having caused the depreciation of the price, remains a full lien on the estate, the act makes a sacrifice of the first mortgagee to the second, in signal violation of the maxim, that he who is first in time is to be preferred. A construction that would lead to such a result, would do injustice to the legislature, and would wound the whole body of our lien laws. The act of 1830 has scope enough in protecting mortgagees from sale at the suits of subsequent judgment-creditors, without converting it into an instrument of destruction among mortgagees themselves.

"A variety of other views and illustrations might be added, and the authorities might advantageously be discussed in detail, if time and circumstances permitted; but they are deemed unnecessary, enough having been said to present the questions ruled, and to indicate the opinion that the sheriff's sale of 24th January, 1848, swept off the lien of Mr. Clarke's mortgage, and delivered the estate

to Mr. Philips unencumbered. The verdict, therefore, must be for the defendants."

*McAllister, Curtin,* and *Mallery,* for plaintiff in error.—It is denied that this case is within the spirit of the act of 1830. That was occasioned, as was said in Berger *v.* Hiester, by a panic among mortgage-creditors. It was intended to benefit both borrower and lender. · The lender was, by that act, enabled to see when his security could be divested by the acts of another. In this case he saw that the debt secured by the only prior encumbrance did not mature for nine years. A *sci. fa.* could not issue until a year thereafter. And the act of 1830 assured him, that under no other form of · process could there be a divestiture of his interest. It is but a mockery to say, that because the execution was for part of the debt thus secured, the property might be swept away at the will of the earlier encumbrancer. That would be repealing the whole of the act of 1830. The cases cited merely decide that if the mortgagee purchases under his own *venditioni,* he has merged his mortgage in his fee-simple. This may well stand with the act of 1830, which was designed not to protect him from his own acts, but from those of strangers. Similar to this is the case of a vendor under articles purchasing under a judgment for the purchase-money, while if a stranger levy and sell, only the equitable interest passes: 5 W. 412; 1 Penna. 474; 16 S. & R. 292.

*Burnside* and *Hale,* contrà.—The charge of the court was simply this: A sale under a judgment on any one security for a debt, or part of a debt, discharges all other securities for the same debt on the same land. This principle has been recognised in every decision from McCall *v.* Lennox to the present time: 7 W. 418, 477; 6 Wh. 210; 5 Barr, 413; 17 S. & R. 400. The fallacy of the argument on the other side, is in assuming that the second mortgagee had not notice that the land could be sold before the principal was due on the prior mortgage. But he had notice that interest fell due semi-annually; that this was a lien for which the land could be then sold; and the rules of property announced by this court had informed him that when a sale was made for any part of the secured debt, the purchaser held a title directly under the first mortgage, and paramount to all subsequent liens.

*June* 18. BELL, J.—The facts of the case and the principles of law by which it must be ruled, are stated with such precision in the charge of the court below, that little remains for us, further

than to notice, with more particularity, some of the determinations upon which it rests, and to indicate the conclusion to which they irresistibly lead.

It was long ago said by Lord Mansfield, in Martin v. Mowlin, 2 Burr. 978, that a mortgage, notwithstanding its form of conveyance, is, even at law, to be considered a mere charge on the land pledged; and the estate of the mortgagee, *being the same thing as the money due on it*, will pass as an accessory to the debt. This doctrine has been recognised by almost innumerable cases, in our own and other courts, and is now so familiar, that it almost savours of affectation to name the authorities. The Corporation v. Wallace, 3 R. 129, may, however, be referred to as one of them peculiarly applicable to the present inquiry; for there, as here, the question was of the effect of a judicial sale upon the lien of a mortgage, and the decision was made to turn on the cautionary character of the instrument. The idea, once fully admitted, almost necessarily led to the deduction, perhaps first distinctly announced in Norris v. Willard, that a sheriff's sale of mortgaged premises, in satisfaction of subsequent liens, unloosed the grasp of the mortgage, and transmitted the subject of it to the purchaser, clear of encumbrance. Then came the act of 1830, which worked a change of the practice in this particular. But its object was, not to interfere with the rational view of the true nature of a mortgage deed, by reinvesting it with its only common-law character of a defeasible conveyance; nor were its provisions intended, in any way, to restrict the before-known rights and remedies of a first mortgagee. Its only object was, to confer an additional security on prior mortgagees, as against subsequent encumbrancers; not to detract, in the slightest degree, from any advantage enjoyed by the eldest security, under the law as it then stood. In fact, it leaves a first mortgagee precisely as it found him, with the single exception of increased security against disturbance or annoyance from younger creditors. He is still armed with all the means of compelling satisfaction he could before exert, unrestrained by the nature of the posterior liens. His remedies, as all know, are threefold: by ejectment to recover possession of the premises—*scire facias* on the mortgage itself—and by action of debt on the bonds accompanying it; in which two last cases, the whole estate of the mortgagor is exposed to sale: McCall v. Lennox, 9 S. & R. 304. That a resort to the second of these remedies would discharge the lien of a second mortgage, is conceded. The effect of the adoption of the last was first considered and stated, after the passage of the

act of 1830, in Pierce *v.* Potter, 7 W. 477. Mr. Justice Kennedy, who delivered the judgment, showed, with great clearness, that a sale under a *venditioni exponas sur* a judgment recovered on a bond accompanying the mortgage, disposed of the whole estate in the land, freed not only of the lien of the mortgage, but of all other liens created as security for debts. The decision was made to proceed on the old ground, that the execution being for the same debt secured by the mortgage, necessarily, by relation, works the same effect as though the proceeding were under the mortgage itself. "The case," said that accurate judge, "must be regarded as standing upon the same ground it would have done had the last-mentioned act (of 1830) never been passed; and, according to the practice, as also the judicial authorities anterior to the passage of the act, it was a settled rule that a judicial sale, either under a junior mortgage and writ of *levari facias*, or a junior judgment and writ of *venditioni exponas*, discharged the land sold of all prior as well as subsequent liens on account of debts, whether created by mortgage, judgment, or recognisance, so that the purchaser acquired, thereby, all the estate which the defendant had in the land relieved from such encumbrances, suffered either by himself, or those under whom he claimed."

The soundness of this conclusion is fully recognised by the succeeding case of Berger *v.* Hiester, 6 Wh. 210, where the principle was extended to embrace a sale made under one of several bonds recited in the mortgage. That a mortgagee may sell the land, thus, on his judgment alone, cannot be disputed on any principle of legitimate interpretation, said the Chief Justice. He added: "There may be no intermediate creditor, and where there is one, it is not his interest, nor that of the debtor, to object to the sale of the entire estate." In Chronister *v.* Wise the same efficacy was accorded to the sale, as against the holders of one of the other bonds secured by the mortgage. This was but a repetition of the older decisions of Donley *v.* Hays, 17 S. & R. 400, and Betz *v.* Heebner, 1 P. R. 280, for it was not thought the act of 1830 had any effect upon the question. Finally, in The West Branch Bank *v.* Chester, a sale by *venditioni exponas*, under a judgment recovered for interest due upon certificates of loan, secured by mortgage, was held to work the same results. Among the reasons for this judgment, the Court of Common Pleas laid it down that, under the interpretation of the act of 1830, given by the Supreme Court in Pierce *v.* Potter and Berger *v.* Hiester, the law in regard to sales on judgments younger than mortgages, where both are securities for the same

debt, remained, notwithstanding the act of 1830, where Willard v. Norris had placed the rule in respect to the effect of _all_ judicial sales. The position was afterwards fully sustained by this court. This result is not, as has been argued, ascribable to the supposed election of the first mortgagee to use his bonds as a means of destroying the hold of his own mortgage, irrespective of its effect on younger mortgages. As has already been intimated, it flows from the fact that the bond and mortgage are but cumulative securities for the same debt, and the use of either, as a means of collecting it from the land pledged, must unavoidably be attended by the same legal effect.

The cases I have hastily reviewed, settle, so far as repeated judicial determination can settle anything, that the act of 1830 does not trammel the before existing rights of a first mortgagee. Its mission is protection, not deprivation, and its shield was made broad enough to cover the interests of posterior mortgagees against subsequent judgments, yet leaving, as incident to the oldest debt, every established means of compelling satisfaction. This being ascertained, we shall find the question agitated in the present litigation, settled to our hand by authority that stands not within the influence of a doubt. McCall v. Lennox is directly to the point. The inquiry was, whether a purchaser of mortgaged lands, sold under a judgment recovered after the date of the mortgage, on a bond secured by it, should prevail against a lessee of the same land, _mesne_ between the execution of the mortgage and the entry of the judgment, the avails of the sale having been applied in discharge of the mortgage? It was insisted for the lessee, as it is here for the second mortgagee, that the intermediate estate, having sprung into existence prior to the judgment, was good against all claiming by virtue of it; that, though the mortgagee, by suing out his mortgage, might have avoided the lease, yet, as he had his election to proceed either on the mortgage by ejectment or _scire facias_, or on the bond by _fieri facias_, the adoption of the latter course threw him on the judgment alone, to which he could not bring the aid of his mortgage; these, though not inseparable, being distinct securities, and the remedies upon them distinct: that, if a party who has distinct remedies elects one of them, he adopts it with all its legal consequences, and is considered as waiving the other, and, as a consequence of this, the judgment binding the equity of redemption, encumbered with the leasehold, it was all that passed to the purchaser. But it was answered that a bond and mortgage represent a debt, to which all the securities are merely adjuncts, having no existence but by their

union with the subject to which they are attached: that there is an inseparable union of the bond with the mortgage, the bond, as immediately representing the debt, being the principal; the .mortgage but an incident or accessory to it, capable of effective vitality only through its connexion with the debt. "How comes it, then," asked Mr. Justice Duncan, "that a judgment for the principal, the debt; a sale for the debt, and a payment of the debt, separates them; that this does not, as a consequence, draw the land with it? I cannot understand why, when the land is sold under process of law for the payment of the debt, the purchaser should not acquire with that the incident, as much as if he had obtained an assignment of the debt. I can understand this when it is sold on a judgment for another debt. That is but an equity of redemption, the residue of the mortgagor's estate in the premises. But, when it is sold for the very debt, secured by the mortgage, I cannot contemplate them as distinct substances." Upon these grounds, the case was decided against the pretensions of the lessee. The affinity between the bond and the mortgage drew them irresistibly together, and thus squeezed out the intermediate obstacle. The same doctrine was applied in the recent case of Bury *v.* Sieber, 5 Barr, 431, which, in principle, is identical with the present. A statement of it will illustrate the argument: The owners of land conveyed it in fee, subject, by a covenant in the deed, to the payment of $1,000, balance of purchase-money, for which they also took the vendee's bond. Several years thereafter, the latter sold a portion of the land to a third person, who entered into possession, and so continued for eight years. The original owner then sued out the bond, without notice to the second vendee, and, after recovering a judgment, caused the whole tract to be sold in satisfaction of it. In a contest between the second vendee and the purchaser from the sheriff, it was decided the latter was vested with a title, by relation to the date of the first deed, and, therefore, in exclusion of the second vendee. The court said: "We see no substantial difference between this case and McCall *v.* Lennox; for the lien created by the deed, and the judgment on the bond, arise out of the same transaction. They are, in contemplation of law, one instrument, form one security, and, consequently, the lien of the judgment, as is there decided, must relate to the date of the lien in the deed."

These cases are decisive of this contest, for, although the transactions out of which they grew occurred before 1830, it has been shown the act of that date worked no alteration in the relative

rights of the parties so situated. It would be strange, indeed, were it otherwise. The second mortgagee accepts his security with a full knowledge of all the remedies open to the first, and, of course, takes it *cum onere*. To say that, by having recourse to his bonds, the first divests the lien of his own mortgage without disturbing the hold of the second, would be to put the creditor in the power of the debtor, by a refusal of an adequate remedy until the whole sum secured by the mortgage fell due. That this would be iniquitous, is amply shown by McCall *v.* Lennox. But more than this, it might put the first mortgagee at the mercy of the second, who, by possessing himself of one of several bonds, might compel a sale subject to the second mortgage, in utter frustration of the first. These considerations, standing alone, might not be accepted as sufficient to show what the law is, but they certainly go far to show what the law is not.

To all this weight of authority and reason, the plaintiff in error interposes a verbal objection. He says the letter of the act prohibits the destruction of the lien of a prior mortgage by sale under the authority of *any* writ of *venditioni exponas*. But to this, a satisfactory answer is given by the learned president of Common Pleas, who points to the evils that must ensue from a rigid adherence to the very words of the statute. Indeed, all the cases show that, in determining the applicability of the act, the debt to be satisfied is everything, the form of execution to be employed, nothing. As is expressly said in Berger *v.* Hiester, " though such a sale is within the letter of the act, it is not within its spirit, because it is not within the mischief intended to be remedied by it." It is, in truth, apparent that the framers of the act, when referring to the form of the execution, thought only of sales to be effected under younger independent judgments. It is impossible to believe they could have had in contemplation a judgment to which the mortgage is itself auxiliary.

The zeal with which this cause was argued for the plaintiff in error, has induced me to add more to the charge of Mr. President Woodward than is, perhaps, necessary. But my only object was to bring distinctly to view the prior cases by which, it is conceived, the principle controverted has been, once and again, recognised and established.

                                        Judgment affirmed.