# Cummings' Appeal.

23　509
199　419

Where one becomes the purchaser of land at a sheriff's sale under an erroneous belief that the lien of a mortgage will be discharged by the sale, and the mistake is discovered before the deed is acknowledged, the Court can grant relief by setting aside the sale. Perhaps it might be granted even at a later period.

APPEAL from the decree of the Court of Common Pleas of *Lycoming county*, in the matter of the distribution of the proceeds of sale of land of A. J. and C. Cummings.

Samuel Gibson had sold land to Andrew J. and Charles Cummings for $2400, and to secure the price of it, he received bonds and a mortgage on the land sold for $1900, and a *judgment note* for the remaining $500. The mortgage was recorded on the 1st September, 1851, and judgment was entered *on the note* the next

day; and in *February* following judgments were entered also on the mortgage bonds. Gibson took out execution on the judgment on the $500 note, and had the land sold by the sheriff on the 2d September, 1852, and bought it himself for $2125, and the sheriff made his return under the Act of 20th April, 1846, applying the proceeds first to *the mortgage*, and the balance to the judgment on the note on which the writ of *ven. ex.* was issued. To this A. J. and C. Cummings objected, that Gibson was not entitled to have the money applied to the judgments on his mortgage bonds, and claimed that the proceeds be paid into Court, or the sale set aside and a resale ordered in pursuance of the provisions of the Act of 20th April, 1846, relating to the mode of proceeding when lien creditors become purchasers at sheriff's sale.

An auditor was appointed, who made report excluding the mortgage from any share of the money, and applying to the judgment on the note what was sufficient to pay it, and allotted the balance of $1510.12 to the mortgagors. The Court, however, applied it according to the sheriff's return, declaring that if the mortgagee was not entitled on his mortgage, the judgments in his favor would prevent the debtors from receiving the fund.

From the decree A. J. and C. Cummings appealed.

It is provided in the 5th section of the Act of 16th April, 1845, that "The entering of any judgment for the same debt secured by any mortgage shall not cause a sheriff's sale of the mortgaged premises to destroy or in any way affect the lien of such mortgage, nor shall the plaintiff in such judgment be entitled to any part of the proceeds of such sale: *Provided always*, That such sale has not been made under or by virtue of such judgment."

The exceptions were, that the Court erred in decreeing that the mortgagee was entitled to the whole amount of the purchase-money after payment of costs; 2. In not decreeing that the defendants were entitled to the proceeds over what was necessary to pay the $500 judgment, and costs thereon, and that the mortgagee, the purchaser, should pay the same into Court, or the property to be resold.

*Lloyd*, with whom was *Heisley*, for appellants.—Though the note for $500 had a common origin with the mortgage bonds, it was not recited in or secured by the mortgage. The appellants ask that they be paid for their equity of redemption, or that the property be resold. The case of Garro *v.* Thompson, 7 *Watts* 416, was referred to.

*Armstrong*, contrà.

The opinion of the Court, except LEWIS, J., was delivered by

[Cummings' Appeal.]

Lowrie, J.—We cannot attach any consequence to the fact that judgments were entered on the mortgage bonds, for the Act of 16th April, 1845, s. 5, forbids it. Nor can we say that the mortgage and the judgment on the $500 note are for the same debt, though they were both given in execution of the same contract. They were, in truth, two debts, differently authenticated and secured; and the payment of one of them does not affect the existence or amount of the other. Then the case seems to be the very one provided for by the Act of 6th April, 1830, which declares that the mortgage shall not be discharged by such sale.

It seems, therefore, that the auditor's report is right, and that the only difficulty in confirming it arises from the fact, that this would most manifestly produce a result which no conscientious man can, without distress, be instrumental in enforcing. It is very plain that Gibson's bid was made on the supposition that it would be applied to pay his mortgage as well as his judgment. He supposed that $2125 was the full price for a clear title, whereas it comes to more than $4000, including the mortgage, and the defendants seek to make this profit out of his mistake.

Must we put the seal of judicial sanction on such an iniquity? There is a principle suggested in the case of Berger v. Hiester, 6 Whart. 210, that might possibly enable us to avoid such a result; but we fear that we may mar the simplicity of the law relating to the discharge of liens, by adopting such an exception, especially since the Act of 1845. But still we are not constrained to allow to the defendants this unscrupulous advantage.

We notice that this sale has not yet been confirmed; and even had it been, possibly this would not preclude the hearing of an application to set it aside: 2 Ves. Jr. 52; 13 Wend. 224; 26 Id. 143; 4 Bro. C. C. 172; 1 Sugd. Vend. 67; 2 Danl. Ch. Prac. 1470.

We do not forget the rule that refuses to hear the allegation of ignorance of the law as a ground of relief; but we must be very cautious in applying this rule to judicial proceedings; for the whole doctrine of amendments proceeds upon a partial denial of it, and it is not at all of absolute obligation in questions of new trial.

A judicial sale is a contract with the Court, made as a part of a remedial process, and certainly the Court has a greater power over such contracts than over any other (1 P. Wms. 747, 1 Green's Ch. R. 216), in analogy to the control which it has over other parts of its proceedings.

There are cases wherein it has exercised this control by setting aside the sale because of the mistake of the purchaser in relation to his legal right in the proceeds: 2 Wend. 260; 8 Paige 337. In one of our own cases the purchaser was led to believe that he was buying a complete legal title discharged of liens when it was

otherwise; and in relation to this it was said that had the purchaser brought such a case before the Court below, he would probably have been discharged from the purchase, and a resale have been ordered: 9 *Ser. & R.* 404.

And in a case exactly like the present one, it is said that if the mortgagee bid for the land under a misapprehension of his right, the mistake might have furnished a sufficient reason for setting aside the sale: 14 *State R.* 383. And this suggestion is peculiarly proper in this class of cases, considering the fluctuations that have been taking place in the law. The difference of opinion arising between the legislature and the judiciary ought not to be allowed to become a snare for those who have failed to keep up with the alterations of the law, if we can relieve them without affecting the rule intended to be established.

There is a very complete remedy in a very ordinary form. We reverse the decree of the Court below, and that leaves the case in the same condition it was in when the auditor's report was filed. Then the Court below has power to set aside the sheriff's sale and relieve the plaintiff from his bid rather than suffer so unconscientious an advantage to be taken: 11 *Ves.* 57; 1 *Edw. Ch. Rep.* 578; 3 *Paige* 97. We will not help out the wrong by confirming the auditor's report; because it would be very unjust, and because the discretion in relation to setting aside or confirming the sale can be better exercised by the Court below.

DECREE.—September 13, 1854. This cause came on for hearing at the last July Term of this Court at Sunbury, on an appeal by Andrew J. Cummings and Charles Cummings, from the decree of distribution of the Court of Common Pleas of Lycoming county, in the case of Samuel Gibson against them, and was argued by counsel, and now, on mature deliberation, it is ordered and decreed that the said decree of the said Court of Common Pleas be reversed, and that the case be remitted to the said Court with instructions to confirm the report of the auditor, and then proceed according to law, unless, within one month after the entry of this decree on the records of the said Court of Common Pleas, the said Samuel Gibson shall, in open Court, or before a judge at Chambers, obtain a rule for setting aside the sale, and relieving him from his bid, and shall prosecute the same afterwards with effect; and, in case the said Court shall be satisfied that in equity and justice the bid of the said Gibson ought not to be enforced, then the said Court shall order and decree that the said sheriff's sale and all subsequent proceedings be set aside at the costs of the said Gibson, and that he shall be relieved and

[Cummings' Appeal.]

discharged from his bid, and have leave to proceed again to execution.

LEWIS, J., delivered an opinion as follows :—

The object of a sheriff's sale is the conversion of the debtor's estate into money for the payment of debts. It is the policy of the law that the highest price should be obtained at the least expense. It is against the interest of debtors and creditors that the property should be sold for less than its value, or that the proceeds should be eaten up by the costs of unnecessary proceedings. Common humanity requires that the misfortunes of life should not be aggravated by such harshness, and common justice demands that legal proceedings should not be made a snare for innocent citizens who repose confidence in them. When the officers of the law sell the real estate of a debtor for the price publicly bid for it, it is unjust to exact anything more than the sum thus agreed to be paid, or to deprive the purchaser of the benefit of his purchase, by means of encumbrances not understood to be continuing liens. Such an act in an individual would be condemned as a fraud. It loses none of its turpitude by being clothed in the garb of public authority. Even the boasted omnipotence of Parliament cannot change the code of morals, and make that just which is in its nature absolutely wrong. In accordance with these principles, it was the settled law, in regard to judicial sales for the payment of debts, that the parties interested were not put to the expense of any more than one sale—that such a sale worked an absolute conversion of the property into money, and consequently discharged the land in the hands of the purchaser from all encumbrances which in their nature admitted of being reduced to certainty in amount. It substituted the proceeds for the land, and gave to the lien-creditors a claim on the fund instead of their liens on the land. The salutary effect of this rule was, that it encouraged competition at such sales, and property brought its full value. The plain business man could bid with as much safety as the more wary speculator. Thus, all parties interested in the property derived the full advantage of its conversion into money. But the Act of 1830 changed this policy so far as to protect the holders of mortgages, having prior liens, from sales under judgments entered subsequently. Under that statute several sales are necessary where one was sufficient before. Whether the title or a mere equity of redemption is sold, depends upon circumstances not always known or easily ascertained at the sale. Hence, no one can safely bid at a sheriff's sale without previously examining the records for judgments, mortgages, and other liens not only against the defendant in the execution, but against all persons who had ever before had any interest in the property. Few men are willing to put themselves to the trouble and expense of these searches

[Cummings' Appeal.]

on a mere possibility that they may become the purchasers. The field is, therefore, abandoned to those who follow the business of making profit out of the misfortunes of their fellows. These men generally obtain their purchases at a price so low as to indemnify themselves against the risks they encounter. But if a creditor, anxious to secure his demand, or a business man, desirous of obtaining a place for his business, or a home for himself and his family, ventures to run the property up to its value, he frequently discovers, after it is too late to recede, that a mortgage exists against the property which sweeps it away from him after he has paid all that it is worth.

Many innocent men have been ruined by the purchase of property at judicial sales since the Act of 1830. After ten years' experience of the evils produced by that Act, the Supreme Court, in 1840, declared that "the consequences of the Act, wherever we have had occasion to observe them, have been disastrous:" 6 *Wharton* 216. After fourteen years' further opportunity to witness the operation of that statute, we are compelled to bear the same testimony against it. Under its provisions no unlearned man can with safety bid at a judicial sale. It was therefore very properly held in Berger *v.* Hiester, 6 *Wharton* 214, that "the disastrous consequences of the Act is a legitimate reason why it should not be pushed beyond the supposed mischief;" and, in the same case, it was distinctly declared that "the design of the Act was to protect the mortgagee from the intermeddling of subsequent creditors," and that "a judgment-creditor *who is himself the prior mortgagee,* was not to be deemed a *subsequent creditor* within the purview of the statute, or, *in his capacity of mortgagee, an object of protection against himself.*" "When he appears in a double capacity," it was held "that a case has arisen which was not contemplated nor consequently provided for:" 6 *Wharton* 216. Although the authority cited was the case of a sale on one of the mortgage bonds, it was declared that "this made no difference— that the consequences would be the same were the securities arising out of different transactions;" and the case was put upon the impregnable ground that the Act was not intended to protect the mortgagee against himself—that *the sale was by virtue of a judgment under his own control, and that by not proposing to sell subject to his mortgage he was taken to sell discharged of it:* 6 *Wharton* 216. That principle settles the case before us. It is, in my opinion, the true meaning of the statute. We have, therefore, sound principle as well as a binding authority in support of the justice of this case. The property in question was sold by virtue of a judgment under the control of Dr. Gibson, the mortgagee, and it was not offered for sale subject to the mortgage. He must therefore be taken to have sold discharged of it. The purchaser took a clear title, and the proceeds should be distributed

[Cummings' Appeal.]

among all the lien creditors according to their priority. If the sale were held to be within the operation of the Act of 1830, the result would be that the owner of the property must lose the use of it for a year, and must pay to those who thus wrong him the sum of $1500 to get it back; and those who purchased it and agreed to pay for it, instead of fulfilling their contract, are allowed a premium for violating it! Justice forbids the sanction of such gross iniquity. In my opinion the proper way to do justice in this case is to enforce the true construction of the Act of 1830 by holding that it was not designed to protect mortgagees against their own acts. But, without affirming or denying the soundness of this construction, the majority of the judges have determined to relieve the mortgagee from the hardship of his case by sending the cause back with such directions as will enable the Court of Common Pleas to set aside the sale. As a general rule, ignorance of the law is no ground for relief from the obligation of a contract. But where the contract is made in some sort with the Courts themselves, and where the highest of these tribunals has actually represented that the purchaser, under circumstances like those existing in this case, would take the land discharged of encumbrances, either that representation ought to be carried out, or the purchaser, acting on the faith of it, should be relieved. Failing to secure the first, I resort to the second as the only alternative left. For these reasons I concur in the decree.