## Bausbach, Appellant, v. Reiff.

*Trespass—Conspiracy—Conspiracy to secure discharge of fellow employee—Charge of court.*

1. A conspiracy is the combination of two or more persons by some concerted action to accomplish an unlawful purpose.

2. The combination to deprive a mechanic or workman of work by force, threats or intimidation of any kind, is a conspiracy, and the fact that such conspiracy is no longer criminal does not render it lawful.

3. Where workmen combine and threaten to strike unless a fellow workman, whom they dislike, is discharged, they are liable in damages to the workman whose discharge they have so procured.

4. In an action to recover damages from plaintiff's fellow workmen for injuries sustained in consequence of plaintiff's discharge from employment, where there was evidence that plaintiff had reported to his employer's manager a theft perpetrated by a night watchman, that thereafter defendants had given the manager a paper signed by them which stated that they would refuse to work after the expiration of twenty-four hours as long as plaintiff was employed in the same plant, and where there was no evidence to show that plaintiff had made himself obnoxious or distasteful towards his fellow workmen, or that they signed the paper for any other reason than that alleged by the plaintiff, which was that he had reported the theft, an instruction to the jury that "If you find ......that these men were justified in requesting the dismissal of this man,......on account of his making himself so unpleasant to them that they did not care to work with him....your verdict

should be in favor of the defendants," was inadequate and erroneous in failing to distinguish between what a single individual may lawfully do and what a combination of individuals may do.

5. In such case an instruction that if plaintiff's habits, or his character, or his conduct while at work towards his fellow workman, was such as to render him an unfit associate of ordinary workman of good character, it would have been sufficient reason for interference by his fellow workmen with his employment, would have been proper.

*Evidence—Res gestœ—Admissibility of letter.*

6. Where declarations or acts accompany a fact in controversy and tend to illustrate or explain it, they are admissible as part of the res gestæ.

7. Where in an action against plaintiff's fellow employees to recover damages for loss of employment resulting from a conspiracy on the part of the defendants caused by their dislike of the plaintiff, a letter was admitted in evidence which had been given the plaintiff by the manager on the day of his discharge and which stated that plaintiff had been discharged through no fault of his own, but at the demand of employees, because he had reported the dishonesty of one of them, the letter tended to illustrate the transaction and was part of the res gestæ, and it was error for the court to strike it from the testimony and direct the jury to disregard it.

MR. JUSTICE MOSCHZISKER dissents in part.


Argued Feb. 18, 1914. Appeal, No. 366, Jan. T., 1913, by plaintiff, from judgment of C. P. Schuylkill Co., Sept. T. 1910, No. 235, on verdict for defendants in case of George Bausbach v. Frank G. Reiff, Geo. E. Schneider, Frantz Bercher, H. Kleibenstein, Levi E. Yohe, Charles Leibner, Leonard Montag, August W. Ost, Frank E. Gross, John J. Ehlers, A. Kirkpatrick, P. Mitchell, Eustus Dehner, Fred Brod, Fred Brod, Jr., Joseph Lucas, Joseph Marburger, J. D. Shaeffer, Josef Merks, Charles Michel, John Hockgurtel, Lewis Christ, William Scheibelhut, George J. Kline, John Scheerer, Jacob Mager, Fred W. Wolf, and Thomas Penberth. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass for conspiracy.  Before MOSER, J., specially sitting.

The facts appear in the opinion of the Supreme Court and in Bausbach v. Reiff, 237 Pa. 482.

Verdict for defendants and judgment thereon.  Plaintiff appealed.

*Errors assigned* were various instructions to the jury, answers to points, and rulings on evidence.

*William Wilhelm,* for appellant.

*Charles A. Snyder,* for appellees.

OPINION BY MR. JUSTICE POTTER, March 30, 1914:

The plaintiff in this case brought this action of trespass against the defendants, to recover from them damages, which he claims to have suffered, by reason of a conspiracy entered into by defendants, to have him discharged from his employment, as chief engineer of the Rettig Brewing Company of Pottsville, Pennsylvania. He had held that position for more than five years, when on July 18, 1910, a committee of employees, presented to the manager of the brewery a paper which was signed by all the defendants, which was as follows:

"Pottsville, Pa., July 17, 1910.

"We the undersigned do hereby declare that we refuse to work after twenty-four hours notice to the employers of the Rettig Brewing Company as long as George Bausbach is employed at same plant."

Upon the trial, plaintiff offered testimony showing that he was discharged by the brewing company in consequence of the threats contained in the paper and repeated orally by the committee, and that the reason the defendants, the signers of the paper, demanded his discharge, was that he had a short time before reported to the manager of the brewing company, the conduct of a night watchman, whom he had detected in stealing goods

from the brewery, and who was discharged in consequence of the report made by plaintiff. The defendants admitted having presented the paper in question to the management of the brewery, but contended that their reason for so doing was not the action of plaintiff in reporting the theft, but because of a general dislike for him.

The trial resulted in a verdict for defendants. Plaintiff has appealed, and his counsel have filed twenty-one assignments of error, chiefly to the charge of the court below, and to its answers to points, and to rulings on offers of evidence. The third assignment is to the following language in the charge to the jury: "If you find, of course, that these men were justified in requesting the dismissal of this man Bausbach, the plaintiff, on account of his making it so unpleasant for them that they did not care to work with him, that is the end of this case; your verdict should be in favor of the defendants." The first, second, twelfth and thirteenth assignments are to language used in the charge and in answering points, with respect to which, substantially the same question is raised, and that is, whether employees, to whom a fellow workman is for any reason disagreeable, may lawfully combine for the purpose of procuring his discharge, by notifying the employer, that they will refuse to work, if the workman to whom they object, is retained. In Erdman v. Mitchell, 207 Pa. 79, this court said, speaking by Mr. Justice Dean (p. 91): "A conspiracy is the combination of two or more persons by some concerted action to accomplish an unlawful purpose. It is unlawful to deprive a mechanic or workman of work by force, threats or intimidation of any kind; a combination of two or more to do the same thing by the same means is a conspiracy. That by the legislation referred to such conspiracy is no longer criminal, does not render it lawful. At common law the courts held that such combination was so prejudicial to the public interests and so opposed to public policy as rendered it punishable

criminally; but the legislature, which generally determines what is and what is not public policy, has declared, that it is no longer a crime or misdemeanor. But this is as far as it has gone, it is as far as it could go without abolishing the Declaration of Rights." And Mr. Justice DEAN quotes with approval (p. 94) from 1 Eddy on Combinations, 416, as follows: "The courts recognize the right of workingmen to combine together for the purpose of bettering their condition, and in endeavoring to attain their object they may inflict more or less inconvenience and damages upon the employer; but a threat to strike unless their wages are advanced is something very different from a threat to strike unless workmen who are not members of the combination are discharged. In either case the inconvenience and damage inflicted upon the employer is the same; but in the one case the means used are to obtain a legitimate purpose, namely, the advancement of their own wages, and the injury inflicted is no more than is lawfully incidental to the enjoyment of their own rights. In the other case, the object sought is the injury of a third party." In Pickett v. Walsh, 192 Mass. 572, LORING, J., said (p. 582): "A single individual may well be left to take his chances in a struggle with another individual. But in a struggle with a number of persons combined together to fight an individual the individual's chance is small, if it exists at all. It is plain that a strike by a combination of persons has a power of coercion which an individual does not have. The result of this greater power of coercion on the part of a combination of individuals is that what is lawful for an individual is not the test of what is lawful for a combination of individuals; or to state it in another way, there are things which it is lawful for an individual to do which it is not lawful for a combination of individuals to do.......We have no doubt that it is within the legal right of a single person to refuse to work with another for the reason that the other person is distasteful to him, or for any other rea-

son, however arbitrary. But......what is lawful for an individual is not necessarily lawful for a combination of individuals."

In DeMinico v. Craig, 207 Mass. 593, it is said in the syllabus, (p. 594) : "A labor strike to get rid of a foreman because some of the workmen under him have a dislike for him is not a strike for a legal purpose." LORING, J., said (p. 599) : "The plaintiff had a right to work and that right of his could not be taken away from him or interfered with by the defendants unless it came into conflict with an equal or superior right of theirs. The defendants' right to better their condition is such an equal right. But to humor their personal objections, their likes and dislikes, or to escape from what 'is distasteful' to some of them, is not in our opinion a superior or an equal right.......One who betters his condition only by escaping from what he merely dislikes, and by securing what he likes, does not better his condition within the meaning of those words in the rule, that employees can strike to better their condition." In the light of these authorities, which point out a sound distinction, between what a single individual may lawfully do, and that which a combination of individuals may do, the instructions of the trial judge which are the subject of the first three assignments of error, were inadequate and erroneous. The united action of the defendants was put upon the same basis as that of any single one of them, the trial judge using by way of illustration a supposed act by Reiff, the first defendant named. It does not appear that the jury were instructed that an act which might be lawful if done by one person, might become unlawful if a number of persons combined to do it. The only fair interpretation which could be placed upon the instructions given, was that, "if Frank G. Reiff or any other one of these defendants" had the right to threaten to stop work if plaintiff was not discharged, the entire twenty-eight men who signed the paper, might lawfully combine to do the same thing. This was not a

sound statement of the law. Again it appears that the jury were instructed that if plaintiff "worked on the nerves" of his coemployees, if he made himself "objectionable," "obnoxious," "unpleasant," or "distasteful" to them they had the right to unite to procure his discharge by threatening to strike. This was going too far. The jury might very well have been instructed that if plaintiff's habits or his character, or his conduct while at work towards his fellow workmen, was such as to render him an unfit associate for ordinary workmen of good character, it would have been sufficient reason for interference by his fellow workmen with his employment. They had the right to combine to advance their own interests in any proper way, but not for the purpose merely of inflicting injury upon another. It appears from the evidence that some of the defendants had disagreements with plaintiff, and gave some reasons for disliking him. But none of them testified that these difficulties caused them to sign the paper. Eighteen of the defendants gave no testimony whatever, and there was nothing to show that plaintiff had in any way made himself obnoxious or distasteful to them, nor was there anything in the evidence to show that they signed the paper for any other reason than that alleged by plaintiff, which was, that he had reported to the company a theft by the night watchman. The first, second, third, twelfth and thirteenth assignments are sustained.

In the sixteenth assignment, it is alleged that the trial judge erred in striking out of the testimony a paper which had been previously offered in evidence by plaintiff and had been admitted by the court. W. B. Shugars testified that on July 18, 1910, the committee handed him the written notification from the defendants, which was dated the previous day. That night another man was put to work by the brewery, in the place of plaintiff. The plaintiff had already testified that Shugars had said to him that it would be best to let him go for the benefit of both sides, and had added, "I will give you a recom-

mendation for the time you worked here and tell you why we had to leave you go." Shugars gave plaintiff the recommendation the same day, and when he was on the stand identified the letter of recommendation, given to plaintiff and signed by him. This letter of recommendation stated in substance that he had been discharged through no fault of his own, but at the demand of employees, because he had reported the dishonesty of one of them. The trial judge admitted the letter in evidence and it was read to the jury, but on the following day, the trial judge having decided that the letter was inadmissible, directed that it be stricken from the testimony and instructed the jury to disregard its contents. Counsel for appellant contends that the letter was admissible as a part of the res gestæ. In 1 Elliott on Evidence, Sec. 537, it is said: "Declarations, which accompany or are a part of the fact or transaction in controversy and tend to illustrate or explain it, such transaction itself being admissible, are also admissible as being so connected as to be a part of the same act or transaction." In Shannon v. Castner, 21 Pa. Superior Ct. 294, RICE, P. J., said (321): "Where declarations or acts accompany the fact in controversy and tend to illustrate or explain it, they are treated, not as hearsay but as original evidence, in other words as part of the res gestæ." In Coll v. Transit Co., 180 Pa. 618, the present Chief Justice, quotes from Wharton on Evidence (2d Ed.) Sec. 259, as follows (p. 626): "The res gestæ may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the

immediate preparations for or emanations of such act, and are not promoted by the calculated policy of the actors." In Shadowski v. Railways Co., 226 Pa. 537, our Brother ELKIN said, (p. 539) : "Under the doctrine of res gestæ those circumstances which are the undesigned incidents of the occurrence upon which the suit is based may be proven when illustrative of the act about which complaint is made. It is true also that these incidents may be separated from the act by a lapse of time more appreciable, but they must grow out of and be in a legal sense immediately connected with the litigated act. They may consist of remarks made at the time of an actor, participant, and perhaps under exceptional circumstances by a bystander, if the party making the remark had to do with or is concerned about the occurrence. It is imperatively required, however, that they should be the necessary incidents of the litigated act in order to make such remarks admissible as testimony." Under the rule as stated and illustrated in these cases, we think the letter of recommendation was admissible in evidence, at least for the purpose of showing the fact of plaintiff's discharge, and showing that the only reason for it as stated by his employer, was the demand and the threat made by defendants. The letter was given to plaintiff upon the same day of his discharge and was a part of the transaction tending to illustrate and explain it. The discharge and the giving of the letter were practically parts of the same event. In so far as the plaintiff was concerned, the letter was an undesigned incident, showing the cause of his discharge, given to him by his employer in explanation of an unjustified action which was forced upon the employer. We think therefore, that the trial judge erred in striking out the letter and in instructing the jury to disregard it. If the letter contained certain statements which were deemed to be irrelevant, the trial judge could have refused to admit such parts of the letter, or could have instructed the jury to disregard them; but instead of doing this he

struck out the entire letter. If it had appeared from the testimony that Shugars had said to plaintiff, "We are obliged to discharge you because these twenty-eight men have threatened to strike, if we continue to employ you, and we have no other reason than this for discharging you," it would hardly be contended that evidence of such a statement was not properly admissible as part of the res gestæ. What difference does it make that Shugars made substantially this statement in writing, and handed it to plaintiff. The sixteenth assignment is sustained.

We do not deem it necessary to consider in detail the remaining assignments of error. For the reasons which we have indicated, the judgment is reversed with a venire facias de novo.

MOSCHZISKER, J., dissents from so much of the above opinion as deals with the subject of res gestæ, under the 16th assignment of error.