Landau et al., Appellants, *v.* Western Pennsylvania National Bank.
Western Pennsylvania National Bank *v.* Carroll et al., Appellants.

Argued March 22, 1971.   Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Thomas H. Welsh* and *Myron B. Markel,* with them *Metz, Cook, Hanna & Kelly,* and *Markel, Markel, Levenson & Schafer,* for appellants.

*Robert G. Sable,* with him *Robert N. Hackett,* and *Baskin, Boreman, Wilner, Sachs, Gondelman and Craig,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

On July 24, 1970, the Western Pennsylvania National Bank instituted mortgage foreclosure proceedings against Robert Carroll and Dan Jennings. Shortly thereafter, Western Pennsylvania and the Kroger Company, lessee of the mortgaged premises, entered into a subordination and attornment agreement whereby the former agreed to subordinate its prior mortgage to the latter's lease. On August 13, 1970, Walter Landau, Thomas Landau, Calvin Landau, Sr., and Calvin Landau, Jr., holders of a junior lien upon the mortgaged property by virtue of a recorded judgment note, filed a complaint in equity seeking to set aside the subordination and attornment agreement on the theory that it unlawfully prejudiced their rights as junior lienors.

The mortgage foreclosure suit and related equity action were consolidated for trial in the Court of Common Pleas of Allegheny County, and Western Pennsylvania moved for summary judgment in each case pursuant to Pa. R. C. P. 1035. The motion was granted by the court en banc, and this consolidated appeal followed. For reasons which follow, we affirm the summary judgments of the court en banc.

The pleadings establish the following facts:

On July 18, 1966, the Bally Castle Corporation conveyed certain property in Ross Township, Allegheny County, to appellants Carroll and Jennings, who planned to erect and maintain a building containing

a supermarket and offices. The deed was executed by Jennings in his capacity as corporate secretary of Bally Castle. On July 19, Carroll and Jennings mortgaged the same property to appellee Western Pennsylvania National Bank to secure a $540,000 loan. At the same time, one Robert Jarvis subordinated his prior mortgage upon a portion of the premises to the Western Pennsylvania mortgage. Both the Western Pennsylvania mortgage and the Jarvis subordination were duly recorded on July 20, 1966.

On August 5 and 9, 1966, Bally Castle leased the major portion of the property in question to the Kroger Company. These leases were also signed by Jennings as secretary of Bally Castle, and each contained a provision that the lessor would deliver to the lessee appropriate agreements subordinating to the lease any mortgage on the demised premises recorded prior to the leases. The Kroger leases were recorded on August 11, 1966, and August 16, 1966, respectively, and Kroger has at all times since been tenant in possession of the supermarket.

On November 22, 1967, more than one year after the execution of the Kroger leases, Jennings, Carroll, Carroll's wife, the Eyrecourt Corporation and Bally Castle executed a judgment note to the Landau Brothers Building Company in the face amount of $194,789.85. Landau Brothers Building Company subsequently assigned the note to appellants Walter Landau, Thomas Landau, Calvin Landau, Sr., and Calvin Landau, Jr., as cotenants trading and doing business as the Whitehall Terrace Company. The judgment note as so assigned was recorded on December 11, 1967.

Carroll and Jennings defaulted under the terms of the Western Pennsylvania mortgage in 1967, and the instant controversy was thus precipitated.

To summarize, the relevant documents appear of record in the following chronology:

| Document | Date Recorded |
|---|---|
| Deed—Bally Castle Corp. to Carroll and Jennings | July 20, 1966 |
| Mortgage—Carroll and Jennings to Western Pennsylvania National Bank | July 20, 1966 |
| Subordination—Jarvis mortgage to Western Pennsylvania National Bank mortgage | July 20, 1966 |
| Lease—Bally Castle Corp. to Kroger | August 11, 1966 |
| Lease—Bally Castle Corp. to Kroger | August 16, 1966 |
| Judgment Note—Carroll and Jennings to Landau Brothers Building Company | December 6, 1967 |
| Assignment of Judgment Note—Landau Brothers Building Company to the Landaus, t/b/d/a Whitehall Terrace Company | December 11, 1967 |
| Mortgage Foreclosure Action—Western Pennsylvania National Bank vs. Carroll and Jennings | July 24, 1970 |
| Subordination—Western Pennsylvania National Bank to Kroger lease | August 4, 1970 |
| Equity Action—Landaus vs. Western Pennsylvania National Bank and Kroger | August 13, 1970 |

Its mortgage being first in time, Western Pennsylvania was not legally bound by the provision in the Kroger lease that any prior mortgages be subordinated to the lease. Had it so elected, Western Pennsylvania could have abrogated the lease by foreclosure on the mortgage, and the property would have been sold at

sheriff's sale unencumbered by the lease. *Fogarty v. Mount Carmel Transit Co.*, 367 Pa. 447, 451, 80 A. 2d 727, 729 (1951); see also Trickett, The Law of Landlord and Tenant in Pennsylvania §470 (Stern ed. 1969); 5 Tiffany, Real Property §1422 (3d ed. 1939). Western Pennsylvania chose otherwise, however, and by virtue of its subordination and attornment agreement with Kroger, any sheriff's sale purchaser would take the property subject to the lease. *Harp Building & Loan Association v. Davis*, 56 Pa. Superior Ct. 282 (1914).

The foregoing legal principles are crucial to the respective positions of the parties in this appeal. The Landaus as junior lienors and Carroll and Jennings as mortgagors contend that the rent presently paid by Kroger under the terms of its existing lease does not reflect the fair market value of the leasehold and that the subordination and attornment agreement thus substantially reduces the value of the property at a sheriff's sale to the financial detriment of the mortgagors and the holders of junior liens. It is further contended that the subordination was part of a fraud and conspiracy designed to chill bidding at the sheriff's sale. Western Pennsylvania for its part denies any fraud or conspiracy and asserts that its decision to subordinate its mortgage to the Kroger lease was designed not to reduce the value of the property but, on the contrary, to enhance and protect its own security interest.

Although the instant case presents a somewhat novel fact situation and our research has failed to disclose any cases directly in point, we believe that appellants' claims are clearly devoid of merit.

## Appeal of Carroll and Jennings

In assessing the contentions of the mortgagor-appellants, it is to be noted initially that the subordina-

tion and attornment agreement was in itself an entirely legal act. As stated in *Harp Building & Loan Association v. Davis,* 56 Pa. Superior Ct. 282 (1914) : "The authority to release part of mortgaged premises from the lien of the mortgage is recognized by statute, and the release of premises or part of premises from the lien of a judgment is a common practice. No conceivable principle of public policy forbids the extension of this right to a leasehold term in the property. As Chief Justice GIBSON said, in Berger v. Hiester, 6 Wharton, 210 : 'It is a maxim that anyone may renounce the benefit of a privilege provided for himself.' " Id. at 285.

There are of course certain well defined duties owing from a mortgagee to his mortgagor. A mortgagee in possession must account for rents and profits, *Winthrop v. Arthur W. Binns, Inc.,* 160 Pa. Superior Ct. 214, 50 A. 2d 718 (1947), must maintain the mortgaged premises in good condition to prevent its deterioration, *Sansotta v. City of Pittsburgh,* 330 Pa. 199, 199 Atl. 164 (1938), and is liable for waste, *Elliott v. Moffett,* 365 Pa. 247, 74 A. 2d 164 (1950). However, none of these duties or any analogous duty was breached by Western Pennsylvania's subordination of its mortgage to the Kroger lease.

As set out above, the lease agreement with Kroger was executed by the Bally Castle Corporation as lessor, and the record does not reveal whether or not Bally Castle and Carroll and Jennings are legally synonymous. It is certain, however, that Jennings personally signed the lease as secretary of Bally Castle, and Kroger has been at all relevant times tenant in possession. Furthermore, in their answer to Western Pennsylvania's mortgage foreclosure complaint, Carroll and Jennings virtually admitted their status as Kroger's landlord, alleging: "10. Western Pennsylvania Nation-

al Bank has sequestered the rents payable from tenants occupying the building on the property subject to mortgage foreclosure since May 1, 1970, and Defendants demand an accounting of all payments and the application of said payments that have occurred since that time and demand that any rental payments should constitute a reduction of the mortgage balance or interest thereon." These facts taken together clearly demonstrate that Carroll and Jennings (a) are Kroger's actual landlord or (b) have at least ratified the lease by knowingly recognizing Kroger's tenancy on the mortgaged premises.

That being the case, we agree with the court en banc that Carroll and Jennings certainly cannot be heard to complain about Western Pennsylvania's voluntary subordination to a lease which they themselves either negotiated or ratified and to which they themselves were legally bound. While a mortgagee in possession might in certain circumstances be under a duty not to let a readily marketable leasehold lie dormant and financially unproductive, cf. *Artisans Order v. Superb Realty Co.*, 353 Pa. 256, 258-59, 44 A. 2d 584, 585 (1945), we perceive no reason why a mortgagee should not be altogether free to fulfill, albeit voluntarily, his mortgagor's legal duty to an existing lessee.

We likewise agree with the court en banc that Carroll and Jennings have not sufficiently pleaded an unlawful conspiracy between Western Pennsylvania and Kroger. A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. *Fife v. Great Atlantic and Pacific Tea Co.*, 356 Pa. 265, 52 A. 2d 24 (1947) ; *Bausbach v. Reiff*, 244 Pa. 559, 91 Atl. 224 (1914). As noted above, Western Pennsylvania's subordination and attornment agreement was in itself a completely lawful act. Hence, con-

spiracy in the present case could be predicated only upon an unlawful means or purpose. However, the only allegation of conspiracy appears in the very last paragraph of Carroll's and Jennings' answer to the mortgage foreclosure complaint and reads as follows: "18. Plaintiff has conspired with the Kroger Co. to limit the value of the subject property at foreclosure and by doing so has adversely affected Defendant's rights."

Pa. R. C. P. 1019(a) directs that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." The purpose of the rule is to require the pleader to disclose the "material facts" sufficient to enable the adverse party to prepare his case. *Smith v. Allegheny County,* 397 Pa. 404, 155 A. 2d 615 (1959); 2A Anderson, Pennsylvania Civil Practice §1019.1 (1969); 3 Standard Pennsylvania Practice §31 (1952); cf. *Roberts v. Peoples Cab Co.,* 7 Pa. D. & C. 2d 632 (1955). In the instant case, the single, vague and conclusory allegation that the mortgagee and lessee have "conspired" to the detriment of the mortgagors falls far short of the requisite pleadings of "the material facts."

Summary judgment was entered in Western Pennsylvania's favor in the mortgage foreclosure action in the amount of $567,000 plus interest from March 1, 1970. This sum represents the $540,000 face amount of the mortgage together with $27,000 for attorney's commissions at the rate of 5%. Carroll and Jennings never admitted this amount of indebtedness in their pleadings, and they presently contend that summary judgment was improper inasmuch as there existed a genuine issue as to damages. This argument is groundless. It is admitted that the mortgage is in default, that the mortgagors have failed to pay interest on the obligation since March 1, 1967, and that the recorded

mortgage is in the amount of $540,000.* In these circumstances, the amount of the summary judgment was entirely proper.

Carroll and Jennings did interpose a counterclaim for $779,483.42 plus interest. This counterclaim, however, was based solely upon the alleged illegality of the Western Pennsylvania subordination agreement, and, as we have already concluded, this agreement was not actionable. Nor does Western Pennsylvania's admitted sequestration of Kroger's rent from May 1, 1970, raise any genuine issue as to the amount of damages to be awarded in the mortgage foreclosure action. The debt owed on the mortgage changed and can be expected to change from day to day, because Western Pennsylvania is mortgagee in possession, collecting rents and paying expenses in that capacity. The mortgagors are unquestionably entitled to an accounting, but that accounting is not due until the property is sold at sheriff's sale and distribution of the proceeds is made. Judgment in a mortgage foreclosure action must be entered for a sum certain or no execution could ever issue on it.

### Appeal of the Landaus

The claims of the Landaus respecting the Western Pennsylvania-Kroger subordination and attornment agreement are largely similar to those made by the mortgagors and may be easily dismissed, for much of our previous discussion is equally applicable in the Landaus' appeal.

The Landaus as judgment creditors stood in the shoes of their debtors, Carroll and Jennings, and did not acquire any rights in the subject property greater

---

* See paragraphs 7 and 8 of the Complaint in Mortgage Foreclosure and paragraphs 11 and 18 of the Answer, New Matter, and Counterclaim.

than those possessed by Carroll and Jennings. See *Miners Savings Bank v. Thomas,* 140 Pa. Superior Ct. 5, 12 A. 2d 810 (1940) (opinion by KELLER, P. J.). As Carroll and Jennings do not possess any legally cognizable right to be compensated for the Western Pennsylvania subordination agreement, the Landaus, claiming through Carroll and Jennings, have no right to vitiate the agreement.

Furthermore, the Landaus' position is devoid of equity. Had there been no mortgage, it is clear that the Landaus' judgment lien would have been subordinate to the Kroger lease. In effect, they are now asking a court of equity to require the paramount lienor (Western Pennsylvania) to forego its own business judgment and exercise *its* right to abrogate the Kroger lease, thereby altering the priorities which would otherwise exist and elevating their junior judgment lien above the lease. Neither the court below nor this Court has been furnished with any reason why they deserve such a windfall.

The Landaus' lien priority was not adversely affected by the subordination and attornment agreement, and the Kroger lease, which should have alerted any junior lienor to the possibility of such a subordination, was recorded more than one year before the execution of the judgment note. The release of a portion of mortgaged premises from the lien of the mortgage is and has been for many years a "common practice" in the financial world. See *Harp Building & Loan Association,* supra. There is no reason for equity to restrain such a release in the instant case.

In a manner similar to that attempted by appellants Carroll and Jennings, the Landaus seek to cast a pall of suspicion over the otherwise innocent and lawful subordination and attornment agreement by alleging that the agreement was part of a conspiracy and fraud. In

paragraph 22 of their complaint in equity, they allege that Western Pennsylvania and Kroger, "acting in concert together, contrived, connived and conspired unjustifiably" to reduce the value of their judgment lien and to interfere as well with the rights of other creditors, and paragraph 25 of the complaint reads as follows: "That the action by and between both Defendants in the execution and filing of the subordination and attornment agreement on August 4, 1970 amounts, Plaintiffs believe and therefore aver, to a fraud upon Plaintiffs and all other lien creditors upon the premises."

The allegation of the conspiracy suffers from the same defect as the conspiracy allegation of appellants Carroll and Jennings in that it fails to recite the material facts upon which the conspiracy claim is based, see Pa. R. C. P. 1019(a), and the conclusory allegation of fraud is insufficient *a fortiori*, for Pa. R. C. P. 1019(b) additionally provides that "[a]verments of fraud or mistake shall be averred with particularity." See *Bata v. Central-Penn National Bank*, 423 Pa. 373, 224 A. 2d 174 (1966); Anderson, supra, §1019.18. Accordingly, the court en banc did not err in granting summary judgment in the face of such bald and unsupported allegations of conspiracy and fraud.

The decree of the Court of Common Pleas of Allegheny County granting summary judgments is affirmed. Each party to pay own costs.