604 A.2d 289

Patricia A. SHAFFER, Appellant,

v.

**PROCTER & GAMBLE, Vocational Rehabilitation Services of Scranton, Inc., Martin Joyce, III, Individually and Ann Marie Tinni, Individually.**

Superior Court of Pennsylvania.

Argued Jan. 16, 1992.

Decided March 6, 1992.

Peter G. Loftus, Scranton, for appellant.

John J. Myers, Pittsburgh, for Procter & Gamble, appellee.

Before ROWLEY, President Judge, and OLSZEWSKI and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from an order sustaining appellees' preliminary objections in a worker's compensation matter.

In May of 1989, appellant, a line worker of ten years standing with appellee Proctor and Gamble Paper Products Corporation (P & G) sustained a job related injury to her arm. The injury was reported, and appellant received medical treatment, including surgery. During the course of the various treatment modalities she underwent, appellant reported to work. However, time lost for the treatment was deducted from her vacation allotment, and was eventually regarded a disciplinary matter implicating appellant's termination by P & G. Various measures were taken by P & G, allegedly in retaliation for appellant's lack of responsibility: her shift was changed, interfering with her ability to receive medical care and to share transportation at a time when driving her own vehicle was difficult; she was threatened with termination, and harassed for demonstrating an uncooperative attitude.

Moreover, although appellant received payments under the Worker's Compensation Act, 77 Pa.S.A. § 1 et seq. (the Act), these have allegedly been sporadic, and it is asserted that the bills submitted by appellant's medical providers have been denied payment by P & G's Industrial Health and Hygiene Manager, appellee Martin Joyce III. Finally, appellant claims that appellee Anne Marie Tinni, a nurse/medical coordinator with appellee Vocational Rehabilitation Services of Scranton, Inc., cancelled appointments made by appellant with her physicians and other care providers, and that appellees collectively prevented her from receiving care at Magee Rehabilitation Hospital in Philadelphia, instead assigning her to a new, and in appellant's estimation untried facility.

The basis for appellant's claim is that the net result of appellees' conduct, which as described by appellant can be

easily characterized as egregious, was that she was denied adequate medical care and that her condition worsened.

In November of 1990, suit was commenced in the Court of Common Pleas of Wyoming County, alleging 1) discrimination against appellant on the basis of her disability in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.; 2) intentional infliction of emotional distress; 3) intentional interference with the contractual relationship between appellant and her health care providers; and 4) common law civil conspiracy. In separate counts, appellant also sought punitive damages from all appellees, and a ruling from the court that the Act is unconstitutional.

All save one of appellees' preliminary objections were granted on grounds that the trial court was without jurisdiction to hear the case because appellant's exclusive remedy was to be sought through enforcement of the Act. The count alleging tortious conduct by Martin Joyce III was sustained by the trial court. However, this count was dismissed by agreement of the parties to permit an appeal on what the trial court describes as the controlling issue of law, namely the application of the exclusivity provision of the Act. This appeal, presenting the same six claims, follows.

We first note that in determining the propriety of court action regarding preliminary objections in the nature of a demurrer,

> we must accept as true all the well-pleaded material facts set forth in the complaint and all reasonable inferences deducible from those facts. *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 520 Pa. 471, 554 A.2d 906 (1989). Accepting these facts and inferences, we then determine whether the pleader has failed to state a claim for which relief may be granted, and we will affirm the grant of a demurrer only if there is certainty that no recovery is possible. *Creeger Brick & Building Supply Inc. v. Mid–State Bank and Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151 (1989). All doubts are resolved in favor of the pleader. Furthermore, by filing preliminary objec-

tions in the nature of a demurrer, appellees have admitted the factual allegations of the complaint for purposes of the demurrer. *Id.*

*Ward v. Serfas,* 387 Pa.Super. 425, 428–29, 564 A.2d 251, 252–53 (1989); *Wolfe v. Porter,* 405 Pa.Super. 385, 592 A.2d 716 (1991).

The crux of the matter before us is, as the trial court correctly determined, whether the exclusivity provision of the Worker's Compensation Act, 77 Pa.S.A. § 481 [1], bars civil actions based on intentional torts which proceed from work related injuries. We are compelled to find, for the reasons that follow, that such actions are indeed prohibited.

■ In what P & G, with some justification, characterizes as an attempt to avoid the consequences of a mis-administered worker's compensation claim, appellant first argues that the trial court erred in refusing to find that the conduct of P & G toward her is compensable not under the the Worker's Compensation Act, but constitutes discrimination against a handicapped person and as such may be redressed under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (PHRA). Although under different circumstances P & G's conduct might well constitute compensable discrimination, the PHRA covers only "non-job related handicaps or disabilities," that is, those which "d[o] not substantially interfere with the ability to perform the essential functions of the employment." 43 P.S. § 954(p). As appellant's disability was and continues to be job related, she is, by definition, not among those protected by the PHRA. Therefore, as to P & G, and for the purposes of this particular claim, the applicability of the Act is a foregone conclusion.[2]

1. 77 P.S. § 481(a) reads in pertinent part as follows:
   (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any section at law or otherwise on account of injury or death.

2. We note that although this issue is recognized by the trial court, it is nowhere specifically addressed. However, we may affirm where the judgment of the trial court is supportable on any legal ground or

■ Appellant's next two issues assign error respectively to the trial court's dismissal of her claims of intentional infliction of emotional distress, and intentional interference with a contractual relationship as against all appellees, P & G, Vocational Rehabilitation Services, Joyce, and Tinni. It is appellant's argument that § 481 is inapplicable to both of these torts pursuant to § 72 of the Act.

**§ 72.  Liability of fellow employe**

If disability or death is compensable under this act, a person shall not be liable at common law or otherwise on account of such disability of death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

Section 411 of the Act specifies, in defining what constitutes an "injury arising in the course of employment," that the term does not include "an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment." This provision has been interpreted to permit an employe to maintain a common law tort action against his employer

whenever his or her injury is the result of an attack or assault by a third person or fellow employe for reasons that are personal to the attacked and not connected with the victim's employment. To fit within this exception, the third party's or fellow employe's act must have been motivated by his animosity against the injured employee. If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the "third party attack" exception.

*Vosburg v. Connolly*, 405 Pa.Super. 121, 126–27, 591 A.2d 1128, 1131 (1991) (emphasis in original).

It is appellant's position that the intentional torts complained of were directed against her personally, were inflict-

theory. *Van Mastrigt v. Delta Tau Delta*, 393 Pa.Super. 142, 573 A.2d 1128 (1990); *Emerick v. Carson*, 325 Pa.Super. 308, 472 A.2d 1133 (1984).

ed outside the scope of the tortfeasors' employment, and therefore are permissible targets of legal action unaffected by the exclusivity provision of the Act.

We first note that there have been cases in which intentional torts were found by this court to lie outside the aegis of the exclusivity provision, e.g., *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 586 A.2d 383 (1990); *Noyes v. Cooper*, 396 Pa.Super. 592, 579 A.2d 407 (1990); *McGinn v. Valotti*, 363 Pa.Super. 88, 525 A.2d 732 (1987), appeal denied 517 Pa. 618, 538 A.2d 500; *Boris v. Liberty Mutual Insurance Company*, 356 Pa.Super. 532, 515 A.2d 21 (1986); However, in *Alston v. St. Paul Insurance Companies*, 389 Pa.Super. 396, 567 A.2d 663 (1989), which most closely approximates the factual situation now before us, an en banc panel of this court held unequivocally that

> The legal immunity which is afforded to employers and their compensation insurers extends not only to acts of negligence, but also to claims based on intentional, wanton and willful misconduct, such as those advanced before us today.

*Id.*, 389 Pa.Superior Ct. at 405, 567 A.2d at 667.

This line of reasoning follows the prescription of our Supreme Court in *Kuney v. PMA Insurance Company*, 525 Pa. 171, 578 A.2d 1285 (1990); *Barber v. Pittsburgh Corning Company*, 521 Pa. 29, 555 A.2d 766 (1989); *Poyser v. Newman & Company*, 514 Pa. 32, 522 A.2d 548 (1987), and of this court in *Rosipal v. Montgomery Ward*, 360 Pa.Super. 570, 521 A.2d 49 (1987), *alloc. granted* 516 Pa. 635, 533 A.2d 93 (1987), *appeal dismissed* 517 Pa. 460, 538 A.2d 495 (1988). However, as the court in *Vosburg, supra,* aptly points out, a blanket statement denying the existence of an intentional tort exception the Act is not finally dispositive, since in claims such as appellant's the pertinent inquiry is whether the assault or attack which is the intentional injury arose out of "personal or business related animosity." *Id.* 405 Pa.Super. at 127 n. 3, 591 A.2d at 1131 n. 3. As our supreme court has recently held, "When the allegations of a claim have as their ultimate basis an injury compensable

under the Workman's Compensation Act, the claim must be considered within the framework of the statute." *Kuney, supra* 525 Pa. at 176, 578 A.2d at 1287. As the appellant's claims in *Kuney* approximated those advanced by appellant herein, we conclude that the exclusivity provision governs, irrespective of earlier cases which seem to direct otherwise.

Even viewed in the light most favorable to appellant, the facts as alleged in this case demonstrate that it was appellant's injury, her subsequent medical treatment, and her eventual refusal to cooperate with P & G's unreasonable demands which resulted in the vindictive, malicious and persecutory treatment she received. It is equally clear that while this conduct is appalling, it is nevertheless job related, and that any employee in a similar situation might have received similar attentions from appellees.[3] For recovery, therefore, she is constrained to resort to the Act.[4]

■ Appellant's claim of civil conspiracy among and between the appellees is premised on the notion that appellees' actions were designed to prevent her from exercising her rights under the Act.

To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *See Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335 (1971); *Fife v. Great Atlantic and Pacific Tea Co.*, 356 Pa. 265, 52 A.2d 24 (1947); *Bausbach v. Reiff*, 244 Pa. 559, 91 A. 224 (1914); *Baker v. Rangos*, 229 Pa.Super. 333, 324 A.2d 498 (1974). Proof of malice, i.e., an intent to injure is essential in

3. Given the applicability of the exclusivity provision, we need not address the issue of punitive damages.

4. The counts against Martin Joyce III describing intentional torts were the only ones sustained by the trial court, which strongly implies that Joyce's actions were outside the scope of his employment, per *McGinn v. Vallotti*, 363 Pa.Super. 88, 525 A.2d 732 (1987). However, no reason was supplied for distinguishing between Joyce and Ann Marie Tinni, the nurse/medical coordinator monitoring appellant's claim, who is accused of the same actions. Given the parties' agreement to drop the surviving claims against Joyce so as to expedite this appeal, we need not explore this matter further.

proof of a conspiracy. *Miller v. Post Publishing Co.*, 266 Pa. 533, 110 A. 265 (1920); *Miller v. Harvey,* 215 Pa. 103, 64 A. 330 (1906); *Irvine v. Elliott,* 206 Pa. 152, 55 A. 859 (1903). This unlawful intent must be absent justification. The test was stated in *Rosenblum v. Rosenblum,* 320 Pa. 103, 108–9, 181 A. 583, 585 (1935):

> Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, Was it done with or without "just cause or excuse"? If it was bona fide done in the use of a man's own property * * * such legal justification * * * would exist not the less because what was done might seem selfish or unreasonable. * * * But such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

*Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466, 472 (1979).

The trial court held appellant's civil conspiracy claim insufficient, being merely conclusory rather than presenting facts. We, too, find that it fails to satisfy the applicable standard for pleading. *Landau v. Western Pennsylvania National Bank,* 445 Pa. 217, 282 A.2d 335 (1971). Moreover, even had the complaint supplied the requisite quantum of facts, the underlying theme of the conduct complained of may be easily understood in terms of P & G's concern for its own economic interests, however reprehensible its mode of self preservation.

Additionally, as the trial court points out, appellant accuses two of the conspirators, Joyce and Tinni, of acting outside the scope of the authority granted them by their employers. (See T.C.O. at 11) If, following appellant's argument, P & G did not agree with Vocational Rehabilitation Services to act unlawfully, nor did the two companies agree to instruct their respective employees to act as they did, no conspiracy is possible at least as to the corporate bodies involved here. Even if the allegation applies only to

Joyce and Tinni, appellant has failed to state facts necessary to make out her claim.

█ Finally, appellant argues that the exclusivity provision of the Act is violative of her right of access to the courts under Article I, Section II of the Pennsylvania Constitution, and of the equal protection clause of the Fourteenth Amendment to the United States Constitution. As appellant also makes clear, she is aware that our Supreme Court has reached a contrary conclusion in *Tsarnas v. Jones and Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980). However, she implies that because our supreme court in *Kline v. Arder H. Verner Company*, 503 Pa. 251, 469 A.2d 158 (1983), noted that the legislature could alter the Act, its constitutionality is suspect. The fact that a statute may be altered by the legislative does not affect its constitutional validity.

In short, appellant's remedy is limited to that provided by the Act. However, having so concluded, we note that despite the merits of the Act and the certainty it offers, behavior such as that demonstrated by appellees in this case would, if supportable, offer a powerful argument in favor of revisions to the Act. We cannot believe that the Act was intended not merely to overlook, but to countenance abuse and persecution.

Order affirmed.