David P. MALONE, Plaintiff,

v.

**SPECIALTY PRODUCTS & INSULATION CO. and Irex Corporation, Defendants.**

No. Civ.A. 97–7364.

United States District Court, E.D. Pennsylvania.

Feb. 17, 2000.

Wayne A. Ely, Timothy M. Kolman & Assoc., Langhorne, PA, for plaintiff.

Alexander Ewing, Jr., Gollatz, Griffin & Ewing, P.C., Media, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, David P. Malone, has sued Specialty Products Insulation Co. ("Specialty Products"), and Irex Corporation ("Irex"), asserting claims under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951 *et seq.*, and claims for fraud or misrepresentation and for failure to provide a safe workplace. Plaintiff's claim for fraud or misrepresentation was dismissed by this Court in its Memorandum and Order of August 13, 1998. Presently before the Court is Defendants' Motion for Summary Judgment. For the following reasons, Defendant's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, who is asthmatic, was an employee of Defendants from 1988 to 1997. When Plaintiff was employed, many of Defendants' employees smoked cigarettes while at work, which aggravated Plaintiff's asthma. On several occasions Plaintiff complained to managers Ernest Iulinetti and Ray Horan about smoking in the warehouse area where he worked, and requested that Defendants act to prevent this smoking. Defendants' personnel policies prohibited smoking on company property, a policy that was apparently not enforced. Plaintiff contends that despite his requests, Defendants failed to accommodate his disability. Plaintiff's medical experts believe that Plaintiff's asthma was aggravated by his exposure to cigarette smoke while at work.

While he was employed by Defendants, Plaintiff was hospitalized three times for severe asthma attacks that he says were caused by exposure to cigarette smoke while at work. The first such hospitalization occurred in September 1995, when Plaintiff was exposed to the residue of cigarette smoke in one of Defendants' company vans. He missed four months of work as a result of that asthma attack. Plaintiff's second hospitalization occurred on April 12, 1996, and kept Plaintiff out of work for ten days. Plaintiff's third hospitalization occurred on January 20, 1997. He attempted to work from home after this hospitalization, but in June, 1997 he found this impossible and stopped working altogether. Plaintiff is still unable to work, and currently receives social security benefits.

Plaintiff's Complaint states causes of action under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq.*, as well as asserting negligence and fraud claims. The fraud claim has previously been dismissed by this Court.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter

of law. Fed.R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether any factual issues exist to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. The Statute of Limitations

Defendants argue that Plaintiff failed to comply with the statute of limitations for his administrative claim, and that his ADA claim is therefore time-barred. *See Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 878 (3d Cir.1990) (stating that if a Plaintiff fails to properly file with the EEOC, the District Court lacks jurisdiction over the claim). Defendants assert, in their Motion, that "since the Plaintiff filed his charge of discrimination, *initially,* with the EEOC, the applicable statute of limitations period is 180 days." Defendants' Motion at 9 n. 4 (emphasis in original). Defendants are referring to 42 U.S.C. § 2000e–5(e), which states that if an administrative claim is filed with the EEOC

before it is filed with a state or local agency, the statute of limitations is 180-days rather than the normal 300-days.

■ Defendants' argument conflicts with the Supreme Court's holding in *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). In that case the plaintiff had filed a complaint with the EEOC 290 days after the alleged discrimination. The EEOC subsequently sent the complaint to the relevant state agency, either voluntarily or because Plaintiff had requested that her complaint be dual-filed. The Court held that the 300–day filing period is available regardless of the state filing. *Id.* at 124, 108 S.Ct. 1666. That rule has been followed by Courts in this District. *See, e.g., Bullock v. Balis & Co.,* 1999 WL 527792 at *3 (E.D.Pa.1999) (citing *Commercial Office Products Co.* for the proposition that "[t]he 300 day extended period for filing a charge with the EEOC is available to a plaintiff regardless of whether the plaintiff timely filed a charge with its state agency."); *Melincoff v. East Norriton Physician Service, Inc.,* 1998 WL 254971 at 6–7 (E.D.Pa.1998). Defendants' argument is therefore incorrect; the appropriate statute of limitations for Plaintiff's administrative claim is 300-days.

■ Defendants also argue that Plaintiff became aware of his claim in September, 1995, and thus the statute of limitations began to run at that time. Plaintiff responds that the "continuing violation theory" is appropriate in this case. Under this theory, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners,* 927 F.2d 1283, 1295 (3d. Cir.1991). *See also Rush v. Scott Specialty Gases,* 113 F.3d 476, 481 (3d Cir.1997). Plaintiff requested an accommodation for his disability on January 6, 1997, which he contends Defendants failed to respond to appropriately. He filed his EEOC charge sixty three days

later, on March 11, 1997. Thus, at least one alleged act of non-accommodation falls within the statute of limitations. The continuing violation theory is appropriate where the conduct in question constitutes a continuous pattern, as opposed to unrelated, isolated incidents. *See Rush* at 483. In this case, the non-accommodation alleged by Plaintiff constitutes a "continuous pattern" of failing to respond to Plaintiff's requests that his disability be accommodated. Accordingly, the continuing violation theory is appropriate in this case.

### III. Prospective Damages under the ADA

Plaintiff argues that he is eligible for damages under the ADA for the period after he became totally disabled in June, 1997. Defendants disagree, pointing to the Third Circuit decision *McNemar v. The Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996). In *McNemar*, the Third Circuit held that "a person unable to work is not intended to be, and is not, covered by the ADA." *McNemar* at 618. Plaintiff, in turn, points to a more recent Third Circuit decision, which allows one who is completely disabled to sue his former employer on the basis of discrimination regarding disability benefits. *See Ford v. Schering–Plough Corporation*, 145 F.3d 601, 608 (3d Cir.1998). The *Ford* decision is not directly on point, as the Plaintiff in the instant case is not alleging discrimination in the administration of disability benefits. But it does begin to illustrate the current status of the *McNemar* decision: it is controversial and its status is in doubt. In *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 498 (3rd Cir.1997), the Third Circuit stated that although *McNemar* remains the law of this Circuit, it "has been the object of considerable criticism. Some of this criticism might be well-founded." *Krouse* at 502–03. Further, the *Krouse* panel expressed "concern that district courts in this circuit are misapplying *McNemar* without first considering the unique facts of that case." *Id.* at 503 n. 5. Judge Becker has even apparently stated

that he thinks *McNemar* is wrongly decided, and should be reversed when the Third Circuit is presented with the opportunity *en banc. See Id.* at 503 n. 4.

■ Nevertheless, shortly after the filing of the parties memoranda on this Motion, this issue was clarified by the Supreme Court in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). After *Policy Mgmt. Sys. Corp.*, a Plaintiff must explain how her claim in a benefits application that she is too disabled to work "is consistent with her ADA claim that she could perform the essential functions of her previous job, at least with reasonable accommodation." *Motley v. New Jersey State Police*, 196 F.3d 160, 164 (3rd Cir.1999) (citation omitted). The Supreme Court still maintained that the ADA only covers one "who, with or without reasonable accommodation, can perform the essential functions of her job." *Id.* (citation omitted). Thus, in the instant case, where the Plaintiff has never claimed that he is currently able to work with a reasonable accommodation, he is unable to recover prospective damages under the ADA for the period after he became totally disabled.

When Plaintiff became totally disabled is also a point of dispute. Defendants' motion asserts January 21, 1997, citing to Plaintiff's application for social security benefits. Plaintiff argues that he worked in a limited capacity until June, 1997, and points out that Defendants acknowledge this in their Motion for Summary Judgment at 3. Both parties thus appear to agree that Plaintiff did not become totally disabled until June, 1997. Because neither party specifies a specific date within that month, the Court will choose June 15, 1997.

### IV. Physical Injuries under the ADA

Plaintiff's Complaint seeks, in its prayer for relief, that "Plaintiff be awarded actual damages, including damages for aggravation of his disability and other physical

injuries inflicted upon him by Defendants, as well as an award to compensate him for his pain, suffering, and humiliation caused by Defendants' actions." Complaint, Prayer for Relief D. In Defendants Motion for Summary Judgment, Defendants argue that Plaintiff cannot recover for such "physical injuries" under the ADA. In support of their argument Defendants do not cite to any statute, nor to any case from within this Circuit. They cite to a Kansas case applying a different workers compensation law, and to several other off-point cases from outside of this Circuit. They also repeat their point that Plaintiff cannot recover under the ADA for the period after he became totally disabled. However, this does not address the issue of whether he can recover for physical damages that occurred when he was not totally disabled and still under the ambit of the ADA. In short, Defendants have failed to provide this Court with a legally supported argument that Plaintiff cannot recover for physical damages under his ADA claim.

The Court has done its own research on the issue, and has not found any statutory or caselaw basis for precluding Plaintiff from recovering for physical damages under his ADA claim. If Defendants develop stronger legal support for their argument, they may repeat it at trial.

## V. Negligent, Reckless, or Intentional Failure to Provide Safe Workplace

■ Plaintiff's Fourth Cause of Action asserts that Defendants negligently, recklessly, or intentionally failed to provide a safe workplace. Defendants argue that this claim is barred by the Pennsylvania Workers' Compensation Act ("PWCA"), 77 P.S. § 1, *et seq*. Under the PWCA, the workers compensation system is "the exclusive forum for redress of injuries in any way related to the workplace." *Kuney v. PMA Ins. Co.*, 525 Pa. 171, 176, 578 A.2d 1285 (1990). However, Plaintiff argues that his claim falls under the "personal animus" exception to the PWCA, which allows an employee to recover under the PWCA for "an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employe [sic] or because of his employment." *Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27 (1992).[1]

■ In support of his argument, Plaintiff cites to his own deposition, in which he states that "there's a possibility" that two employees smoked around him to intentionally injure him. Plaintiff's Reply at 26. At the outset, the Court does not find Plaintiff's reliance upon his own deposition, in which he states that there is "a possibility" that the these employees intended to injure him, to constitute sufficient factual basis to support his claim. But nevertheless, based on Plaintiff's other deposition testimony, it is clear that even if his "possibility" were to turn out to be fact, his recovery under a negligence claim would be precluded by the PWCA. Plaintiff's personal animus argument is that two of his co-workers intentionally smoked near him to injure him. In Plaintiff's deposition he stated that "I do know there were certain instances that occurred within the company that it would have been in their best interests had I not been employed by the company any longer." Plaintiff's February 5, 1998 Deposition at 90. The "certain instances" to which Plaintiff refers are his reporting one employee for theft from the company (the employee was fired, then eventually rehired), and his being "very vocal" about another employee's "theft ring." *Id.* at 93. The "possibility" of animosity between Plaintiff and these two employees is thus rooted in Plaintiff's involvement in one getting fired for theft, and his willingness to be "vocal" about the other's theft. "Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed because of the employment, and the in-

1. Plaintiff's Memorandum refers to this as the "third party attack" exception to the PWCA.

jured employee's remedy is exclusively under the Workmen's Compensation Act." *Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597, 601 (1995). *See also Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 n. 16 (3rd Cir.1999) (stating that "[w]e understand Pennsylvania law to extend worker's compensation preemption to personal animosity that develops from work-related events.") The animosity in this case, if it exists, would have developed because of a work-related dispute, and thus Plaintiff's exclusive remedy is under the Workmen's Compensation Act.

### VI. Plaintiff's PHRA Claims

For the reasons discussed above in Section V, Plaintiff's PHRA claim is precluded by the PWCA. *See Shaffer v. Procter & Gamble, Vocational Rehabilitation Services of Scranton, Inc.,* 604 A.2d 289, 291 (1992) (stating that "the PHRA covers only non-job related handicaps or disabilities, that is, those which do not substantially interfere with the ability to perform the essential functions of the employment") (citations omitted).

### VII. Plaintiff's 42 U.S.C. § 1981/1981a Claim

Plaintiff's Complaint asserts a claim under "42 U.S.C. § 1981," when Plaintiff in fact intended to assert a claim under 42 U.S.C. § 1981a, a distinctly different claim. The Court originally denied Defendants' Motion to Dismiss on this basis, granting Plaintiff leave to amend his Complaint to fix the error. Plaintiff has not done so, so Defendants again argue that the claim should be dismissed. Plaintiff responds that Defendants have not been prejudiced by this error, and that they will submit an amended Complaint. To date, they have not done so. Nevertheless, the Court agrees that Defendants have not been prejudiced by this typographical error. The Court accordingly grants Plaintiff ten (10) days in which to file an amended complaint fixing this error. If Plaintiff fails to do so, his Third Cause of Action will be dismissed.

### VIII. Defendant IREX Corporation

Plaintiff submitted a second Response to Defendants' Motion for Summary Judgment protesting that its negligence claims against Defendant IREX Corporation ("IREX") should not be dismissed even if they are dismissed against Defendant Specialty Products and Insulation Co. ("SPI"). This is the first filing in which Plaintiff distinguished between the two Defendants, other than in his identification of the parties in his original Complaint. Defendants argue in reply that Plaintiff's Complaint does not correctly plead a negligence claim directly against IREX. For example, Defendants point out that Plaintiff did not identify a duty owed to Plaintiff by Defendant IREX.

The Court does not feel that it has received sufficient legal or factual arguments at this time to determine that IREX is an inappropriate defendant in this case. But, Plaintiff has given the Court no reason to treat IREX differently from SPI. Thus, where the Court has determined above that Plaintiff's causes of action must be limited or dismissed, those determinations apply equally to both Defendants.

### CONCLUSION

Plaintiff has complied with all appropriate statutes of limitations in this case. The appropriate statute of limitations for his administrative claim is 300–days, and further the continuing violation theory is appropriate in this case. Plaintiff is not entitled to recover prospective damages under the ADA for the period after he became totally disabled. Plaintiff is, however, able to recover damages for physical injuries incurred while he was still under the ambit of the ADA. Plaintiff's Second and Fourth Causes of Action, under the PHRA and for negligence, respectively, are unable to survive Defendants' Motion for Summary Judgment. Finally, Plaintiff is ordered to amend his Complaint with

ten (10) days to clarify that his Third Cause of Action comes under 42 U.S.C. § 1981a, rather than 42 U.S.C. § 1981.

An appropriate Order follows.

### ORDER

AND NOW, this 17th day of February, 2000, upon consideration of Defendants' Motion for Summary Judgment, as well as the parties' responses thereto, and in accordance with the foregoing Memorandum, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part, as follows:

1. Plaintiff is limited to recover under his First Cause of Action only for damages incurred prior to June 15, 1997;

2. Summary judgment shall be ENTERED in favor of Defendant on Plaintiff's Second Cause of Action. Plaintiff's Second Cause of Action is accordingly DISMISSED;

3. Summary judgment shall be ENTERED in favor of Defendant on Plaintiff's Fourth Cause of Action. Plaintiff's Fourth Cause of Action is accordingly DISMISSED; and

4. Plaintiff is ordered to amend the Third Cause of Action in his Complaint, to reflect the statute under which he intends to proceed, within ten (10) days of the entry of this Order.